STATE OF CONNECTICUT *v.* VAN HARRIS
(11603)

PETERS, C. J., HEALEY, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued November 7—decision released December 24, 1985

*Monte P. Radler,* special public defender, for the appellant (defendant).

*Christopher Malany,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,*

state's attorney, and *Thomas P. Miano* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

SANTANIELLO, J. After a jury trial, the defendant, Van Harris, was found guilty of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1) and of being an accessory to robbery in the second degree in violation of General Statutes §§ 53a-135 (a) (1) and 53a-8.[1] In subsequent proceedings, the defendant was also found to be a persistent felony offender under General Statutes (Rev. to 1979) § 53a-40 (b).[2] He was sentenced to an effective term of not less than nine nor more than eighteen years. On appeal he claims that: (1) there was insufficient evidence to support his conviction of robbery in the second degree as an accessory; (2) under § 53a-135 (a) (1) and the facts of this case he could not be convicted as an "accessory"; (3) the jury could not consistently have found him both "guilty as

---

[1] The defendant has not appealed his conviction of forgery in the second degree.

General Statutes § 53a-135 provides: "(a) A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present; or (2) in the course of the commission of the crime or of immediate flight therefrom he or another participant in the crime displays or threatens the use of what he represents by his words or conduct to be a deadly weapon or a dangerous instrument.

"(b) Robbery in the second degree is a class C felony."

General Statutes § 53a-8 provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and published as if he were the principal offender."

[2] General Statutes (Rev. to 1979) § 53a-40 (b) provides in pertinent part: "A persistent felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. This subsection shall not apply where the present conviction is for a crime enumerated in subdivision (1) of subsection (a) and the prior conviction was for a crime other than those enumerated in subsection (a)."

an accessory'' and ''not guilty as a principal'' of robbery in the second degree; and (4) he was erroneously tried as a persistent felony offender under the version of § 53a-40 (b) in effect before July 1, 1981. We find no error.

I

The defendant first claims that there was insufficient evidence to find him liable as an accessory to robbery in the second degree. Under General Statutes § 53a-8, a person may be prosecuted and punished as if a principal offender when, ''acting with the mental state required for the commission of an offense, [he] solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense . . . .'' The defendant argues that he did not intentionally aid or otherwise further the commission of robbery in the second degree. In addressing his claim, ''the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'' *State* v. *Scielzo,* 190 Conn. 191, 197, 460 A.2d 951 (1983), quoting *Jackson* v. *Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560, reh. denied, 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). In finding guilt beyond a reasonable doubt, the jury is free to draw reasonable, logical inferences from the facts proved. *State* v. *Morrill,* 193 Conn. 602, 608, 478 A.2d 994 (1984).

The jury in this case could reasonably have found the following. The defendant and a male companion pulled into a gas station in South Windsor at approximately 12 p.m. on October 20, 1980. One of the station attendants, Lois Hendricks, filled the defendant's gas tank at his request. The defendant asked her if they accepted travelers checks and she said that they did. Hendricks

and the defendant then went inside to the station's office. He handed her the supposed travelers check, which was in reality a money order, and she tried to verify its validity by calling a telephone number listed on the back of the instrument. Meanwhile, the other station attendant on duty, Robert McNamara, came into the office and sat down. The defendant's companion also came into the office and stood in the doorway.

Hendricks was unable to verify the money order after fifteen to twenty minutes and refused to cash it. The defendant became annoyed and demanded that Hendricks do something about it. She refused and threatened to call the police. The defendant at that point became openly hostile and tried to grab the money order from Hendricks. The defendant's companion moved from the doorway, lunged at Hendricks and ripped a roll of money from one of her shirt pockets. McNamara got up to come to her aid but was attacked by the defendant's friend. The defendant moved toward Hendricks and hemmed her in behind a counter. The defendant then ripped the phone from the wall. The defendant and his companion fled, punching Hendricks and pushing her into the counter as they left. The defendant drove the car out of the station while the other man sat on the back bumper and covered the license plate.

On these facts, the jury could reasonably have found that the defendant intentionally aided the robbery. The defendant, after he saw his friend take the money, moved toward Hendricks to prevent her from taking any action in retaliation. He ripped the phone from the wall to prevent her from calling the police. The defendant also hit Hendricks while fleeing and aided in making the getaway. The jury could reasonably have inferred from the defendant's actions that he intended

to aid and did in fact aid his companion in robbing Hendricks of the cash.[3]

## II

The defendant next claims that he should not have been charged as an accessory to robbery in the second degree. His argument begins with the premise that in order for anyone to be an "accessory" to robbery in the second degree, the "underlying crime" of robbery in the second degree must first be proved. Under General Statutes § 53a-135 (a) (1), he argues, there must be two "principals" involved before a crime is established. Thus, he claims that only when three or more people are involved can anyone be charged as an "accessory" to robbery in the second degree. Since there were only two people involved in this robbery, the defendant concludes that he could not be considered an "accessory." We do not agree. The defendant has misunderstood the nature of the verdict and judgment against him, misconceived basic concepts of accessorial liability, and misconstrued the applicable statutes.

The defendant's argument presupposes that there are two independent crimes involved here: the crime of robbery in the second degree and the crime of being an accessory to robbery in the second degree. But, "[t]here is no such crime as 'being an accessory'; the defendant was charged with [one] substantive offense . . . . The accessory statute merely provides alternate means by which a substantive crime may be committed." *State* v. *Baker,* 195 Conn. 598, 608, 489 A.2d 1041 (1985); see also *State* v. *Raffone,* 161 Conn. 117, 128, 285 A.2d 323 (1971). The defendant was charged in a single count

---

[3] The defendant proffers the argument that he took the actions he did because of his forgery of the money order. The defendant, however, did not even take the forged instrument with him when he left. From this fact, the jury could have reasonably concluded that it was not the forgery which prompted his actions, but the robbery.

with robbery in the second degree under two alternate theories of liability: (1) that he actively used or threatened to use physical force upon another person for the purpose of preventing or overcoming resistance to the taking of property, action in itself a violation of General Statutes § 53a-135 (a) (1); or (2) that he intentionally aided another person in committing robbery in the second degree, also a violation of General Statutes § 53a-135 (a) (1) by means of the liability imposed by § 53a-8. The jury found the second theory persuasive and found the defendant guilty of violating General Statutes § 53a-135 (a) (1) because he intentionally aided in the commission of the robbery. There was no "underlying crime" involved, nor a crime of "being an accessory." The defendant was charged with and later convicted of one single substantive crime, the crime of robbery in the second degree.

The defendant also attempts to draw a sharp distinction between principal and accessorial liability. This state, however, long ago adopted the rule that there is no practical significance in being labeled an "accessory" or a "principal" for the purpose of determining criminal responsibility. See General Statutes (1875 Rev.) tit. XX, c. XIII, part X; *State* v. *Gargano,* 99 Conn. 103, 109, 121 A. 657 (1923); *State* v. *Hamlin,* 47 Conn. 95, 118 (1879). The modern approach "is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. Such is the view taken in the Model Penal Code, which provides that a person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of the offense, he solicits the other person to commit it, or aids or agrees or attempts to aid the other person in planning or committing it, or (having a legal duty to prevent the crime) fails to make

proper effort to prevent it." LaFave & Scott, Criminal Law (1972) § 63, p. 501; see also Model Penal Code (1985) § 2.06, comment 6. Connecticut has taken the same approach through General Statutes § 53a-8. See *State* v. *Baker,* supra; *State* v. *Raffone,* supra. The defendant is incorrect, therefore, when he argues that his liability turns on whether he was found to be a "principal" or an "accessory." Those labels are hollow; the only predicate for charging him with violating General Statutes § 53a-135 (a) (1) is direct involvement in the crime.

Further, the defendant has misconstrued the plain language of General Statutes § 53a-135 (a). Section 53a-135 (a) provides: "A person is guilty of robbery in the second degree when he commits robbery and (1) he is aided by another person actually present . . . ." The defendant argues that someone must be charged as aiding the robbery in the capacity as a "principal" before anyone else can be charged with aiding the robbery as an "accessory" under General Statutes § 53a-8. This argument is without merit. The legislature would not have used the verb "aided" if it wanted to describe the "other person" in the statute as a "principal" party to the crime. Also, significantly, the commission formed by the legislature to revise the criminal statutes characterized the "other person" as an "accomplice" — the generic term used by the drafters of the Model Penal Code to connote liability without distinguishing between "principal" and "accessory."[4] See Commission to Revise the Criminal Statutes, comment to Gen-

___

[4] In its comments, the commission stated: "Robbery in the second degree makes the presence of an *accomplice* an aggravating factor. The rationale is that the *accomplice* is equal to a person armed and therefore would generate a higher degree of fear in the victim. Robbery in the second degree is also aimed at circumstances where the actor or *accomplice,* although not armed with a deadly instrument, purports or represents to be so armed . . . ." (Emphasis added.) Commission to Revise the Criminal Statutes, comment to General Statutes (Rev. to 1971) § 53a-135.

eral Statutes (Rev. to 1971) § 53a-135; Model Penal Code (1985) § 2.06. The legislature clearly intended that any person aiding in the commission of the crime be punished for that crime regardless of the label or the number of accomplices.

### III

The defendant also claims that the jury could not consistently have "convicted him under the accessory statute" and "acquitted him of the principal charge of robbery." We disagree. Again, the defendant has misunderstood the nature of the charge against him and has misstated the law of accessorial liability. As explained above, the jury did not "acquit" him of the charge of robbery in the second degree. On the contrary, the jury found him guilty of violating General Statutes § 53a-135 (a) (1) by reason of the liability imposed on him through General Statutes § 53a-8.[5] The jury merely selected from alternate theories of liability. He was found to be responsible for the crime because he intentionally aided in its commission. The jury's conclusion was thus not inconsistent.

### IV

The defendant's fourth and final assignment of error is that he was erroneously prosecuted as a persistent felony offender under General Statutes (Rev. to 1979) § 53a-40 (b), the version of the statute in effect at the time of the robbery and forgery. He claims that Public Acts 1980, No. 80-442 (hereinafter the act), effective July 1, 1981, repealed the earlier version of § 53a-40, that his prosecution under the prior statute was void, and that he should have been tried, if at all, under the statute as amended. He also argues that the

---

[5] The judgment file states the following: "Said cause having been fully heard and committed to the jury, they by their verdict on March 2, 1982 find the said Van Harris guilty of Accessory to Robbery in the Second Degree and Forgery in the Second Degree."

newer version demands a greater quantum of proof.[6] We conclude that there is no support for the proposition that the legislature through the act intended to affect pending prosecutions. As a result, the defendant's claim must fail.

The defendant was charged with being a "persistent felony offender" under General Statutes (Rev. to 1979) § 53a-40 (b). On October 20, 1980, the day the robbery and forgery took place, § 53a-40 (b) read as follows: "A persistent felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime." Public Acts 1980, No. 80-442, reformulated much of § 53a-40. Subsection (d) was amended to read: "A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony; and (2) has, at separate times prior to the commission of the present felony, been twice convicted of a felony other than a class D felony." Public Acts 1980, No. 80-442, § 12. The act by its own terms became effective July 1, 1981. Public Acts 1980, No. 80-442, § 28. The defendant was

---

[6] We need not decide whether the state, if required to prosecute the defendant under the newer version of the statute, would have been required to make a greater showing. The defendant claims that he should have been tried under General Statutes (Rev. to 1981) § 53a-40 (d) which provides: "A persistent felony offender is a person who (1) stands convicted of a felony other than a class D felony; and (2) has, at separate times prior to the commission of the present felony, been twice convicted of a felony other than a class D felony." The state, however, may have sought to prosecute the defendant under General Statutes (Rev. to 1981) § 53a-40 (b), a provision substantially similar to that under which the defendant was originally charged. Section 53a-40 (b), after July 1, 1981, read in part: "A persistent serious felony offender is a person who (1) stands convicted of a felony; and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime . . . ."

brought to trial on February 23, 1982, and was found guilty of being a persistent felony offender on March 3, 1982. The act made no mention of its effect on pending prosecutions.

The defendant urges us to find implied in the act the legislative intent that all prosecutions under General Statutes § 53a-40 pending as of July 1, 1981, be void and that all defendants then facing charges under § 53a-40 be tried under the amended version of the statute. In order to accept the defendant's argument, however, we would have to ignore the savings clause embodied in General Statutes § 54-194. Section 54-194 provides: "The repeal of any statute defining or prescribing the punishment for any crime shall not affect any pending prosecution or any existing liability to prosecution and punishment therefor, unless expressly provided in the repealing statute that such repeal shall have that effect." We must presume that the legislature was cognizant of the existence and effect of the savings clause when it passed Public Acts 1980, No. 80-442. See *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *Doe* v. *Manson,* 183 Conn. 183, 187, 438 A.2d 859 (1981). Therefore, we must also presume that the legislature did not intend the amendments to § 53a-40 to affect pending prosecutions.

There is no error.

In this opinion the other judges concurred.