[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTIONS TO DISMISS
The defendants, Lee Morsey, Steven Hinckley and Catherine Morsey were arrested and charged with violating Connecticut's Solid Waste Management Act, General Statutes 22a-207 et seq. Charges were brought by the State of Connecticut ("the State") pursuant to General Statutes22a-226a, which states, in pertinent part, that:
 Penalty: Any person who knowingly violates any provision of section . . .22a-208a, any permit issued under said section 22a-208a, subsection (c) or (d) of section 22a-250 . . . shall be fined not more than twenty-five thousand dollars per day for each day of violation or imprisoned not more than one year or both. . . . CT Page 4827
General Statutes 22a-226a.
Lee Morsey was charged with two (2) counts of violation General Statutes 22a-208a. Count one of the Information charged Mr. Morsey with the crime of "permit for construction, alteration or operation of a solid waste facility in the Town of New Milford, Connecticut, on or about February 15, 1991." In count two (2) Mr. Morsey was charged with the crime of operating a landfill without a permit in the Town of New Milford between February 16, 1991 and April 30, 1991.
Defendant Stephen Hinckley was also charged, pursuant to General Statutes 22a-208a, with the crime of permit for construction, alteration or operation of a solid waste facility in the Town of New Milford on or about February 15, 1991. In count two (2) Mr. Hinckley was charged with operating a landfill without a permit between February 16, 1991 and April 30, 1991, in the Town of New Milford. Additionally, Mr. Hinckley was charged with violating General Statutes 22a-250(c) and 53a-8 for dumping in the Town of Torrington, Connecticut, on or about December, 1990.
Defendant Catherine Morsey was charged with violating General Statutes22a-250(c) and 53a-8 for dumping in the Town of Newtown, Connecticut, on or about May, 1990. She was also charged with violating the same statutes in the Town of Washington, Connecticut, on or about April 19, 1990. Pursuant to the defendants' motions, Bills of Particulars were furnished by the State. On April 23, 1992, the defendants, pursuant to Practice Book 814 and 815(2) and General Statutes 54-56, filed a motion to dismiss the Information against them and attached thereto, inter alia, a supporting memorandum. On May 1, 1992, the State filed a memorandum in opposition to the motion to dismiss.
In their memorandum in support of their motion to dismiss, defendants Lee Morsey and Hinckley first contend that the Informations and the Bills of Particulars, as they pertain to an alleged violation of General Statutes22a-208a, are defective and fail to charge an offense.
The Information states that the defendant [s]:
 [D]id commit the crime of permit for construction, alteration or operation of solid waste facility at New Milford on or about February 15, 1991, in violation of General Statutes 22a-208a.
The Bills of Particulars elaborate upon this, stating that the defendants:
 [E]ngaged in the operation of a solid waste facility at a premises and property named L S Construction, and located at 322 Kent Road, New Milford, Connecticut, in that reach defendant] engaged in the activity of dumping, spreading, burying, and allowing solid waste to remain at said location, in excess of ten cubic yards, during the time period commencing before CT Page 4828 February 4, 1991, and continuing through May 3, 1991, without a permit, in violation of Connecticut General Statutes 22a-208a. (Emphasis added.)
The defendants note that the Bills of Particulars narrow the date of the alleged violation from February 15, 1991, as articulated in the Informations, to "between February 4, 1991 and May 3, 1991." The defendants contend that, consequently, the solid waste was at this location on a temporary basis, specifically, until May 3, 1991, and, therefore, there has been no violation of General Statutes 22a-208a because the activity with which they are charged is not of a permanent nature.
The State rebuts this claim, stating that the defendants have confused the time period during which the violations were observed to have occurred with the intent and circumstances necessary to be demonstrated in order to show disposal.
The first issue, then, is whether General Statutes 22a-208a
requires proof that the defendants specifically intended to provide a final resting place for debris transported by them to the site in question. In Carothers v. Capozziello, 215 Conn. 82, 574 A.2d 1268 (1990), the court considered this "intent" issue with regard to General Statutes 22a-250 (c) and the Carothers court's analysis of that section is relevant here. The Carothers court discussed the meaning of "dumping," "discarding" and "abandonment" and held that "proof of a specific intent is not required in order to establish a violation of 22a-250(c). . . ." Carothers, supra, 128. The court, in reaching this conclusion, stated that:
 [Section] 22a-250 (c) does not require that [the commissioner of environmental protection] shoulder any burden of proof on the issue of whether the alleged violator specifically intended to abandon the waste permanently at the time it was illegally `dumped.' That does not, however, end our inquiry since the commissioner is required, by 22a-248 (122, to present sufficient evidence from which the trier can conclude that the material `dumped' was also `discarded' . . . . In the context of illegal dumping, the most common usage [of `discard'] that comes to mind is `throw away' . . . . To say that `discard' means to `throw away' only further complicates the inquiry, since regardless of the term utilized, the intent of the alleged violator will always be relevant to the final determination of whether waste has been `discarded.' Concluding that intent is relevant is not, however, the same as requiring proof of specific intent.
 In this respect, the question of whether waste has been `discarded' is similar to the factors that will be considered when it has been claimed that property has been abandoned. Although, before legal abandonment can be found, there must be proof of an intent to abandon. . . that requirement can be met without resort to proof of specific intent. Most frequently, where abandonment has been CT Page 4829 held established, there has been found present some affirmative act indicative of an intention to abandon, . .but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances'. . . .Thus, rather than being obligated to prove that the defendants' `dumping' coincided with a specific intent to abandon what was `dumped,' proof of `discarding' is sufficient when the totality of the evidence reveals that the alleged violator has `abandoned' or `thrown away' or `discarded' the material in question for an indefinite period of time. We conclude that this inquiry does not-require any in depth probing of the thought process of the alleged violator at the time of the `dumping.' (Citations omitted). (Emphasis added.)
Carothers, supra, 129-31
In the present case, as in Carothers, supra, the totality of circumstances must be considered to permit a determination of the defendants' general intent. This issue raises a question of fact to be determined by a trier thereof as to what extent, if any, the alleged disposal occurred. Furthermore, it appears that the period of time stated in the Bill of Particulars derives from the fact that the defendants were arrested on or shortly before May 3, 1991, and, therefore, no further allegations need be made because the defendants' alleged illegal activity has been detected and, by virtue of their arrest, hopefully terminated. The dates stated in the Bills of particulars appear to illustrate the time period during which the alleged violations were observed. Such an observation does not represent the defendants' intent that the activity would cease on any specific date. The motion to dismiss is accordingly, denied.
Both Mr. Morsey and Mr. Hinckley have also been charged with a second count of violating General Statutes 22a-208a for operating a landfill without a permit between February 16, 1991 and April 30, 1991. Information. The Bills of Particulars state that:
 The State of Connecticut alleges that the defendant[s], Lee B. Morsey [and Stephen Hinckley], engaged in the operation of a solid waste facility at a premises and property named L S Construction, and located at 322 Kent Road New Milford, Connecticut, in that [they] requested, commanded and intentionally aided another person to engage in the activity of dumping, spreading, burying, and allowing solid waste to remain at said location, in excess of ten cubic yards, during the time period commencing before February 4, 1991, and continuing through May 3, 1991, without a permit, in violation of Connecticut General Statutes 22a-208a and 53a-8. CT Page 4830
The defendants also contend that, contrary to the language of the Bill of Particulars, there is no liability pursuant to General Statutes22a-208a for a person requesting, commanding and intentionally aiding another person to engage in dumping and allowing solid waste to remain for a designated period of time. However, the defendants have been charged with violating General Statutes 53a-8, criminal liability for acts of another, as that statute pertains to General Statutes 22a-208a. General Statutes 53a-8 states that:
 A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender.
General Statutes 53a-8.
In the present matter, the "offense" referred to in General Statutes53a-8 is the violation of General Statutes 22a-208a. Thus, pursuant to 53a-8, "a person may be prosecuted and punished as if he were a principal offender. . . .[T]he terms (accessory and principal) refer to the alternate means — by which one substantive crime may be committed. . . ."' State v. Smith, 212 Conn. 593, 598,569 A.2d 1089 (1989) (citations omitted). See also State v. Hopkins, 25 Conn. App. 565, 568-69,595 A.2d 91, (1991) (stating that Connecticut's accessory statute,53a-8, "merely provides an alternative theory under which liability for the underlying substantive crime may be proved"). Thus, in the present case, the allegations outlined in the Bill of Particulars are sufficient to withstand the defendants' motion to dismiss.
Defendant Hinckley next contends that the Information and Bill of Particulars charging him with violating General Statutes 22a-250 (c) and 53a-8 are defective and fail to charge an offense because they fail to allege that he dumped debris without the consent of the owner of the property on which said debris was dumped. The defendant relies upon Carothers, supra, for the proposition that to violate 22a-250 (c), the person dumping material on private property must do so without the permission of the owner of that property.
As the Carothers court noted:
 Section 22a-250 (c) prohibits the dumping of any material, `upon private property in this state not owned' by the person dumping. Exceptions to this prohibition are provided when the activity occurs on property `designated by the state or any political subdivision thereof for dumping' and the person dumping is authorized to do so, or when the `property is a licensed facility' for dumping. CT Page 4831
Carothers, supra, 120, quoting General Statutes 22a-250 (c). This statute "clearly prohibits a person from `dumping' on land not owned by him without permission of the owner of that land." Carothers, supra. Furthermore, "[t]here is no indication from the legislative history. . . that 22a-250(c) was intended to apply to those who `dump' with the permission of the land owner." Carothers, supra, 122. Section 22a-250(c) states that:
 No person shall dump . . . any material upon any public property in the state or upon private property in this state not owned by him whether from a vehicle or otherwise, except when such property is designated by the state or any political subdivision thereof for dumping and such person is authorized to use such property or such property is a licensed facility for such purpose. . . .
General Statutes 22a-250 (c).
Thus, the State maintains that it is not necessary for it to include in either the Information or the Bill of Particulars allegations that the defendant dumped debris on property without the consent of said property's owner. While it is true that 22a-250 (c) does not appear to apply to those who dump with the consent of the land owner, Carothers, supra, such a conclusion does not represent a statutory element of the crime alleged.
No pleading defect "has resulted in more dismissals of indictments and information than the failure to allege each of the essential elements of the offense." W. LaFave J. Israel, Criminal Procedure 19.2 (1984 Supp. 1991) Indeed, as is apparently the case here, there have been cases wherein the prosecution has omitted from the Information and Bill of Particulars an element of the offense because it did not believe that the offense included that element. Id. See, e.g., United States v. Irwin, 654 P.2d 671, 681-82 (10th Cir. 1981), cert. denied, 455 U.S. 1016,102 S.Ct. 1709, 72 L.Ed.2d 133 (1982) (where the Court of Appeals upheld the trial court's denial of the defendant's motion to dismiss).
 Even though a particular circumstance is mentioned in the statute: [T]hat does not necessarily make it an element of the offense. In some instances, that circumstance may constitute a defense which must be established by the defendant. Consider, for example, a state statute which prohibits the distribution of a particular substance unless prescribed by a physician. If the absence of a prescription is an element of the offense, it must be alleged in the accusatory pleading. If the presence of a prescription is an exception to be established by the defense, it need not be negated in the pleading.
LaFave Israel, supra, n. 81. CT Page 4832
Courts look to various factors to:
 [D]istinguish between defenses and elements of the offense. These include: (1) whether the exception was treated as a defense at common law; (2) whether the exception was `so incorporated in the language of the statute defining the crime that the elements of the offense cannot be accurately described if the exception is omitted'; and (3) whether the exception appears in the enacting law of the statute (suggesting it is an element of the offense) or is located in a subsequent clause (suggesting it is a defense).
LaFave Scott, supra.
Here the contested language, specifically, the issue of the permission of the property's owner, does not constitute an element of the alleged offense. The offense charged in this matter is predicated upon statutory law (General Statutes 22a-250 (c)) which contains no language whatsoever to the effect that the alleged violator must have acted without the consent of the landowner. Indeed, the only basis for the defendant's position is that our Supreme Court has stated that General Statutes22a-250 (c) was not meant to apply to those who dump with the permission of the property owner. Thus, in the present case, the "particular circumstance" is not mentioned anywhere in the statute. Consequently, in light of the aforementioned standards, the permission of the owner of the property on which any alleged dumping transpired represents a defense to an alleged violation of General Statutes 22a-250 (c) and, therefore, the State need not specify this as an element of the offense charged. The motion to dismiss is denied on this ground as well.
Additionally, Mr. Hinckley maintains that the State's failure to identify the person whom he allegedly aided in dumping should result in this charge's dismissal. However, the fact that there is no indication in the Information or the Bill of Particulars as to the identity of the alleged principal does not render this charge subject to dismissal pursuant to General Statutes 53a-8. See, e.g., State v. Van Harris,198 Conn. 158, 502 A.2d 880 (1985). Consequently, Mr. Hinckley's motion to dismiss this charge is denied,
Defendant Catherine Morsey was charged, according to the Bill of Particulars with:
 [E]ngag[ing] in the activity of dumping, as defined in subdivision (12) of Section 22a-248 of the Connecticut General Statutes, in that the solicited, requested, commanded and intentionally aided another person to cause litter in excess of one cubic foot to be deposited on and buried at a property located at Black Bridge Road, Newtown, Connecticut, and owned by one Leonard Ballwig, during the month of May, 1990, in violation of Connecticut General Statutes section CT Page 4833 22a-250 (c) and section 53a-8.
Ms. Morsey is also charged, according to the Bill of Particulars, with committing the same acts in the Town of Washington, Connecticut. The defendant moves to dismiss these charges for the same reasons articulated by Mr. Hinckley. Her motion is similarly denied.
BY THE COURT, GILL, JUDGE