## STATE OF CONNECTICUT *v.* TIMOTHY SOLEK
### (SC 15595)

Callahan, C. J., and Borden, Berdon, Palmer, McDonald, Peters and E. O'Connell, Js.

Argued May 27—officially released August 12, 1997

*Susann E. Gill*, assistant state's attorney, with whom were *C. Robert Satti, Jr.*, senior assistant state's attorney, and, on the brief, *Donald A. Browne*, state's attorney, for the appellant (state).

*G. Douglas Nash*, public defender, with whom was *Michael A. Fitzpatrick*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. In an amended information filed on January 3, 1997, the state charged the defendant, Timothy Solek, with five criminal offenses. Count one charged the defendant with capital felony (murder committed in the course of the commission of a sexual assault in the first degree) in violation of General Statutes § 53a-54b (7).[1] Counts two and three charged the defendant with murder in violation of General Statutes §§ 53a-54a (a) and 53a-8,[2] and felony murder in violation

---

[1] General Statutes § 53a-54b provides in relevant part: "Capital felony. A person is guilty of a capital felony who is convicted of any of the following . . . (5) murder by a kidnapper of a kidnapped person during the course of the kidnapping or before such person is able to return or be returned to safety . . . (7) murder committed in the course of the commission of sexual assault in the first degree . . . ."

[2] General Statutes § 53a-54a provides in relevant part: "Murder. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception . . . ."

General Statutes § 53a-8 provides in relevant part: "Criminal liability for acts of another. (a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender. . . ."

of General Statutes § 53a-54c.[3] Counts four and five charged the defendant with sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1),[4] and sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3).[5] The trial court dismissed count one of the amended information, in part, on the basis that it failed to state an offense. See Practice Book § 815 (2).[6] The state has appealed that dismissal on the basis of a grant of certification, pursu-

[3] General Statutes § 53a-54c provides in relevant part: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

[4] General Statutes § 53a-70 provides in relevant part: "Sexual assault in the first degree: Class B felony: Nonsuspendable sentences. (a) A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person, or (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person, or (3) commits sexual assault in the second degree as provided in section 53a-71 and in the commission of such offense is aided by two or more other persons actually present. . . ."

[5] General Statutes § 53a-71 provides in relevant part: "Sexual assault in the second degree: Class C felony: Nine months not suspendable. (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (2) such other person is mentally defective or mentally incapacitated to the extent that he is unable to consent to such sexual intercourse; or (3) such other person is physically helpless . . . ."

[6] Practice Book § 815 provides: "—Matters To Be Raised

*"The following defenses or objections, if capable of determination without a trial of the general issue, shall, if made prior to trial, be raised by a motion to dismiss the information:*

"(1) Defects in the institution of the prosecution including any grand jury proceedings;

"(2) *Defects in the information including failure to charge an offense;*

ant to General Statutes § 52-265a[7] and Practice Book § 4180,[8] by Justice Borden, acting in place of the Chief Justice, who was unavailable. We conclude that count one of the amended information properly charged the defendant with the offense of capital felony. We therefore reverse the dismissal by the trial court and remand the case for further proceedings.

Before addressing the substantive issue in this appeal, we set forth the relevant factual circumstances

"(3) Statute of limitations;

"(4) Absence of jurisdiction of the court over the defendant or the subject matter;

"(5) Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial;

"(6) Previous prosecution barring the present prosecution;

"(7) Claim that the defendant has been denied a speedy trial;

"(8) Claim that the law defining the offense charged is unconstitutional or otherwise invalid; or

"(9) Any other grounds." (Emphasis added.)

[7] General Statutes § 52-265a provides: "Direct appeal on questions involving the public interest. (a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

[8] Practice Book § 4180 provides: "Application for Certification Pursuant to General Statutes § 52-265a—Unavailability of Chief Justice

"If the chief justice is unavailable or disqualified, the most senior associate justice who is available and is not disqualified shall rule on the application for certification."

out of which the charges against the defendant arose, and the procedural history of the case. In response to the defendant's renewed motion for a bill of particulars, the state filed a statement of essential facts setting forth the factual allegations that the state intended to prove at trial. The state claimed that on May 12 or 13, 1995, the defendant and another man, Scott Smith, visited the victim at her apartment in Bridgeport. The state alleged that the defendant threatened the victim by telling her that he would tie her up, throw her in the closet and burn her. The state alleged further that an altercation ensued between the victim and the defendant and Smith when the victim attempted to push the defendant out of her apartment. According to the state's allegations, Smith grabbed the victim in a headlock and attempted to knock her to the floor. The victim began to scream and struggle as Smith wrestled with her. Smith asked the defendant to get a knife. After unsuccessfully searching the apartment for a knife, the defendant stabbed the victim in the head with a can opener. As the victim continued to fight with Smith, the defendant hit the victim in the head with an iron. The defendant then kicked the victim five times, causing her to spit up blood. Smith manually strangled the victim and struck her in the neck with his knee as the defendant hit her in the head with the iron. After rendering her physically helpless, Smith proceeded to have oral sex with the victim. Smith also unsuccessfully attempted to have vaginal sexual intercourse with her while the defendant watched. After Smith was finished, the defendant had vaginal and anal sexual intercourse with the victim, causing lacerations of the vaginal wall and the junction of the perineum and posterior introitus of the vagina. The defendant ejaculated in the victim. The state alleged that the cause of the victim's death was asphyxia and that Smith had caused her death by manual strangulation.

Shortly thereafter, both the defendant and Smith gave separate and differing written statements to the Bridgeport police, each confessing their involvement in the events described above. On May 30, 1995, on the basis of the defendant's confession, the state charged the defendant by information with two counts of capital felony (murder committed during the course of a kidnapping, and murder committed during the course of the commission of sexual assault in the first degree in violation of subdivisions [5] and [7], respectively, of § 53a-54b), one count each of murder and felony murder, one count of first degree sexual assault, two counts of second degree sexual assault, one count of kidnapping in the first degree and one count of unlawful restraint in the first degree. In that information, the first count alleged, in part, that the defendant "did murder another person in the course of the commission of [s]exual [a]ssault in the [f]irst [d]egree, in violation of [§] 53a-54b (7) . . . ." Count three alleged, in part, that the defendant, "with intent to cause the death of . . . another person, did strangle, and cause the death of the said other person, in violation of [§] 53a-54a (a) . . . ." The state also charged Smith by information with several criminal offenses, including, among other things, two counts of capital felony in violation of subdivisions (5) and (7) of § 53a-54b, one count of felony murder and one count of murder.

The trial court, *Ronan, J.*, granted the defendant's motion for a separate probable cause hearing and for severance of the case against him from the state's case against Smith. As a result, two trial court judges conducted separate hearings in probable cause for the defendant and for Smith. Because of a potential problem under *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the defendant's confession was not admitted as evidence in Smith's probable cause hearing, and, likewise, Smith's confes-

sion was not admitted as evidence in the defendant's probable cause hearing. The trial court, *McKeever, J.*, found probable cause with respect to the defendant on the charges of capital felony (murder committed in the course of the commission of sexual assault in the first degree), murder and felony murder, but did not find probable cause with respect to the second capital felony count (murder committed in the course of a kidnapping). The trial court, *Gormley, J.*, found no probable cause with respect to Smith on the two counts of capital felony and the felony murder count. The court, however, did find probable cause with respect to Smith on the murder count.

On December 11, 1996, the state filed an amended information, charging the defendant with six criminal offenses.[9] In that information, the state had altered the wording of the murder count to charge the defendant on the basis of an accessory theory of liability. The murder count provided as follows: "[The defendant], with intent to cause the death of another person, *did intentionally aid one Scott Smith, who did strangle, and cause the death of the said other person, in violation of [§§] 53a-8 and 53a-54a (a).*" (Emphasis added.) The wording of the capital felony count, however, remained the same as it had been in the May 30, 1995 information.

The trial court, *Hartmere, J.*, held a hearing on, among other things, the defendant's motion for a bill of particulars.[10] At that hearing, the defendant objected

[9] In count one, the state charged the defendant with capital felony (murder committed in the course of a sexual assault in the first degree), and in count two charged him with murder. The remaining counts charged the defendant with felony murder, sexual assault in the first and second degrees and unlawful restraint in the first degree.

[10] The defendant had also filed several motions, eight of which related to the imposition of the death penalty in this case. The defendant had filed a motion, dated October 29, 1996, for a pretrial determination that he was ineligible for the death penalty. In addition, the defendant had filed six

to the form of the capital felony count in the December 11, 1996 amended information. The defendant requested that the state reword the capital felony count to allege that the defendant's liability was accessorial in nature, so that it would be consistent with the murder count. The defendant argued that the wording of the capital felony and murder counts would cause confusion for a jury because the murder count alleged that the defendant had aided Smith to commit the murder, but the capital felony count alleged that the defendant had murdered the victim. Although the state represented to the trial court that the capital felony count would be reworded to charge the defendant as an accessory to capital felony, the state filed another amended information on December 31, 1996, in which the wording of count one remained the same, except for the addition of Smith's name. The defendant subsequently moved the trial court to strike count one of the December 31, 1996 amended information.

On January 3, 1997, the state filed the five count amended information that is involved in this appeal.[11] In that information, the state had reworded the capital felony count to allege that "at the City of Bridgeport, Fairfield County, on the 13th day of May 1995 at or about 2:39 a.m., at 2900 Main Street, Apartment 432, Bridgeport, [the defendant], in the course of the commission of Sexual Assault in the First Degree, with intent to cause the death of another person, *did intentionally aid one Scott Smith by striking with an iron, stabbing with a can opener, and kicking another per-*

motions to dismiss the state's alleged aggravating factor on the basis that Connecticut's capital sentencing scheme was unconstitutional. Finally, the defendant had filed a motion to prohibit the state from questioning potential jurors regarding their attitudes or beliefs concerning the death penalty.

[11] The January 3, 1997 amended information contained only five counts because the state had abandoned its charge of unlawful restraint in the first degree. The wording of the murder, felony murder and sexual assault counts remained the same.

*son, while the said Scott Smith did strangle, and cause the death of the said other person,* in violation of [§] 53a-54b (7)." (Emphasis added.) The defendant again objected to the wording of the capital felony count, and orally moved the court to dismiss count one of the January 3, 1997 amended information pursuant to Practice Book § 815 (2). The defendant interpreted the amended capital felony count as charging the defendant under an accessory theory of liability because of the use of the word "aid" in the charge. Because Judge Gormley had not found probable cause to believe that the purported principal in the crime, Smith, had committed capital felony, the defendant argued that the state could not charge the defendant with capital felony on the basis of an accessory theory of liability. In addition, the defendant contended that the wording of the amended version of count one was vague and illogical and failed to state a cognizable offense. The state maintained that count one of the January 3, 1997 substitute information properly charged the defendant with capital felony as a principal, and that the additional facts had been added only in response to the defendant's motion for a bill of particulars.[12]

After substantial argument, the trial court, *Hartmere, J.,* dismissed the capital felony count of the January 3, 1997 amended information. In its appeal from the trial court's decision, the state argues that count one of the

---

[12] The state's attorney stated: "Our position is [that] on the capital felony the defendant is a principal, because the underlying portion of that crime is the crime of sexual assault in the first degree. There has never been any claim by the defense that we're alleging other than the fact [that] the defendant was a principal to that particular crime, that in the course of that sexual assault there was an intentional murder as opposed to an accidental murder, an intentional murder committed by both people, although the actual person who killed her was Mr. Smith, as we've acknowledged, by the strangulation. We allege that the activity of the defendant was set forth with sufficient precision to inform the defendant of the nature of the proceedings in order to prepare a defense at this particular time."

January 3, 1997 amended information properly charged the defendant with the offense of capital felony in violation of § 53a-54b (7). The state, furthermore, contends that count one provided the defendant with constitutionally adequate notice of the charge against him, and that such notice was sufficient to enable the defendant to prepare a defense. We agree.

## I

The first basis upon which the trial court dismissed count one of the January 3, 1997 substitute information was Practice Book § 815 (2). Practice Book § 815 sets forth nine separate bases upon which a criminal defendant may ground a pretrial motion to dismiss. See footnote 6 of this opinion. Subdivision (2) of § 815 affords a criminal defendant the right to have an information dismissed prior to trial because of "[d]efects in the information including *failure to charge an offense* . . . ." (Emphasis added.) The trial court determined that the charging language of count one was defective because it failed to state a cognizable offense. We have not had occasion to address the standard of appellate review applicable to a trial court determination, pursuant to § 815 (2), that an information, or, as in this case, one count of an information, failed to charge an offense. Although several of the bases for dismissal in § 815 are grounded in statutes; see, e.g., General Statutes §§ 54-56 (insufficiency of evidence or cause), 54-193 (statute of limitations), 54-82c (speedy trial); and at least one of those determinations is discretionary in nature; see General Statutes § 54-56; we conclude that a trial court's dismissal of an information in whole or in part, pursuant to § 815 (2), because it failed to charge an offense amounts to a determination that the facts alleged in the information do not satisfy applicable statutory requirements. Where, as in this case, the question is a matter of statutory construction rather than of factual sufficiency, this determination constitutes a question of law that is reviewed de novo.

The first question we must determine, therefore, is whether the allegations in count one of the January 3, 1997 information charged the offense of capital felony. Count one stated in relevant part that "[the defendant], in the course of the commission of Sexual Assault in the First Degree, with intent to cause the death of another person, did intentionally aid one Scott Smith by striking with an iron, stabbing with a can opener, and kicking another person, while the said Scott Smith did strangle, and cause the death of the said other person, in violation of [§] 53a-54b (7)." The state's theory of the defendant's liability for the offense was that, in the course of sexually assaulting the victim, the defendant aided Smith in killing the victim. Pursuant to § 53a-8, therefore, the defendant could be held criminally liable for murder on the basis of an accessory theory of liability. Moreover, because the defendant aided Smith in killing the victim during the course of committing his own sexual assault, the state asserted that the defendant also could be held criminally liable for capital felony. Implicit in the trial court's dismissal of count one, and in the defendant's arguments in his brief and at oral argument, is the assertion that the legislature did not intend the prohibition of § 53a-54b (7) to apply to such a situation. We conclude, to the contrary, that the legislature intended the provisions of § 53a-54b (7) to encompass a factual situation such as that charged in count one of the state's January 3, 1997 amended information.

"Our fundamental objective when construing a statute is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.)

*Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 295, 695 A.2d 1051 (1997); see also *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996). When construing statutes, "we will avoid constructions that lead to absurd, unworkable or bizarre results." *In re Flanagan*, 240 Conn. 157, 183, 690 A.2d 865 (1997); see also *State* v. *Morales*, 240 Conn. 727, 736–37, 694 A.2d 758 (1997).

Section 53a-54b provides in relevant part that "[a] person is guilty of a capital felony who is convicted of . . . murder committed in the course of the commission of sexual assault in the first degree . . . ." In 1980, the legislature added this offense to the list of capital felonies in § 53a-54b. Public Acts 1980, No. 80-335 (P.A. 80-335). A review of the legislative history of P.A. 80-335 reveals that the legislature did not specifically contemplate whether its use of "murder" in the wording of the offense encompassed murder committed by an accessory as well as murder committed by a principal. Public Act 80-335 must be read, however, in light of the principle of criminal law, based both in statutory and common law, that a defendant may be convicted of a substantive offense, through the use of accessory principles of liability, even though the defendant did not actually commit the substantive offense. See General Statutes § 53a-8; *State* v. *Hicks*, 169 Conn. 581, 585, 363 A.2d 1081 (1975); *State* v. *Raffone*, 161 Conn. 117, 128, 285 A.2d 323 (1971).

The accessory statute in place in 1980, § 53a-8, provided in relevant part that "[a] person, acting with the mental state required for commission of an offense, who . . . intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct *and may be prosecuted and punished as if he were the principal offender.*" (Emphasis added.) General Statutes (Rev. to 1979) § 53a-8. In addition, we have stated that "[t]here is no such crime as being an accessory . . . . The accessory

statute merely provides alternate means by which a substantive crime may be committed." (Internal quotation marks omitted.) *State* v. *Harris*, 198 Conn. 158, 163, 502 A.2d 880 (1985), quoting *State* v. *Baker*, 195 Conn. 598, 608, 489 A.2d 1041 (1985), and *State* v. *Raffone*, supra, 161 Conn. 128. "This state . . . long ago adopted the rule that there is no practical significance in being labeled an accessory or a principal for the purpose of determining criminal responsibility. See General Statutes (1875 Rev.) tit. XX, c. XIII, part X; *State* v. *Gargano*, 99 Conn. 103, 109, 121 A. 657 (1923); *State* v. *Hamlin*, 47 Conn. 95, 118 (1879). The modern approach is to abandon completely the old common law terminology and simply provide that a person is legally accountable for the conduct of another when he is an accomplice of the other person in the commission of the crime. . . . [The] labels [of accessory and principal] are hollow . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, supra, 164–65; see also *State* v. *Correa*, 241 Conn. 322, 340–41, 696 A.2d 944 (1997).

Because these principles of accessory liability were well established when the legislature enacted P.A. 80-335, we infer that the legislature intended its use of "murder" in the wording of the offense of capital felony to encompass murder committed by an accessory as well as murder committed by a principal. We find the defendant's alternate interpretation of § 53a-54b (7) to be unpersuasive.

The defendant argues that a defendant may be held criminally responsible for the capital felony of murder committed in the course of the commission of a sexual assault in the first degree only if the defendant, with the intent to cause the death of the victim, either: (1) intentionally causes the death of the victim in the course of a sexual assault in the first degree; or (2) intentionally aids another person and the other person, in the course

of that person's sexual assault of the victim, intentionally causes the death of the victim. The defendant argues that if Smith did not complete the crime of capital felony and if the defendant did not actually cause the death of the victim, then the defendant cannot be held criminally liable for capital felony. The legislature cannot have intended such an interpretation when it enacted P.A. 80-335, however, because it would lead to bizarre results. See *State* v. *Morales,* supra, 240 Conn. 737; *In re Flanagan,* supra, 240 Conn. 183. If one breaks capital felony into its constituent parts of murder and sexual assault in the first degree, the defendant's argument falls in upon itself. According to the defendant's argument, a defendant who is an accessory with respect to the murder and an accessory with respect to the sexual assault may be held criminally liable for capital felony on the basis of § 53a-8, but a defendant who is an accessory with respect to the murder, *and a principal with respect to the sexual assault* may not be held criminally liable for capital felony. According to the defendant's interpretation of § 53a-54b, then, a defendant who has aided another person to commit the two substantive elements of capital felony, and thus is liable for capital felony pursuant to § 53a-8, may avoid capital felony liability by *himself committing* one of the substantive elements of capital felony. Because such an interpretation of § 53a-54b (7) would be bizarre and illogical, the defendant's argument must fail. We conclude, accordingly, that count one of the information properly states a capital offense under § 53a-54b (7) and, therefore, should not have been stricken under § 815 (2) of the rules of practice.

Moreover, contrary to the defendant's alternate argument, count one of the information also provided him with sufficient notice of the crime charged. When an information "inform[s] the defendant of the charge against him with sufficient precision to enable him to prepare his defense and to avoid prejudicial surprise,

and [is] definite enough to enable him to plead his acquittal or conviction in bar of any future prosecution for the same offense, [the information has] performed [its] constitutional duty." (Internal quotation marks omitted.) *State* v. *Spigarolo,* 210 Conn. 359, 381, 556 A.2d 112, cert. denied, 493 U.S. 933, 110 S. Ct. 322, 107 L. Ed. 2d 312 (1989). As long as an information provides "the statutory name of the offense . . . identifie[s] the place of the offense, the names of the victims, and the general nature of the acts . . . the allegations . . . [are] sufficient." Id., 382. Count one of the January 3, 1997 amended information notified the defendant of the statutory name of the offense with which he was charged, and of the date, time and place of the alleged offense. In addition, count one, coupled with the statement of essential facts, notified the defendant of the general nature of the acts that the state intended to prove that he had performed. Count one sufficiently set forth the charge against the defendant to enable him to prepare a defense and to plead his acquittal or conviction in bar of any future prosecution for the same offense. See *State* v. *Chapman,* 229 Conn. 529, 538, 643 A.2d 1213 (1994).

II

The trial court's second basis for dismissing count one of the January 3, 1997 amended information was *State* v. *Hope,* 203 Conn. 420, 524 A.2d 1148 (1987). In that case, the state charged Hope, pursuant to an accessory theory of liability, with capital felony (murder for hire) in violation of § 53a-54b (2). Id., 421. In the second count of the indictment, the state alleged that Geraldine Burke had hired John J. McGann, for his pecuniary gain, for the purpose of causing the death of her husband, Donald C. Burke. Id., 422. The second count alleged further that Donald Burke was murdered by a person or persons, including Hope, which person or persons, with intent to cause the death of Donald

Burke, did cause the death of Donald Burke. Id. The trial court dismissed the second count of the indictment for failure to allege the essential elements of capital felony and the state appealed to this court. Id. During the pendency of the state's appeal, we decided *State* v. *McGann*, 199 Conn. 163, 506 A.2d 109 (1986). In that case, the trial court had found McGann guilty of capital felony for his role in the murder of Donald Burke. Id., 164. On appeal, however, we concluded that McGann could not be convicted of capital felony because, in view of the evidence presented by the state at trial, the hiring relationship required by § 53a-54b (2) was not present. Id., 176–78. In other words, we concluded as a matter of law that § 53a-54b (2) did not encompass the factual circumstances presented in the case.

As a consequence of our decision in *McGann*, we dismissed the state's appeal in *Hope* as moot. *State* v. *Hope*, supra, 203 Conn. 425. We stated that "[a]s the state acknowledges, [Hope] can no longer be tried on a charge of capital felony murder in light of our determination that McGann was not a hired assassin under the terms of § 53a-54b (2). . . . [Hope] cannot be held liable as an accessory on [the capital felony] charge in the absence of evidence that anyone else committed a capital felony murder."[13] Id., 423–24.

The trial court in the present case concluded that these statements in *Hope* mandated dismissal of count one of the January 3, 1997 amended information. First, the trial court construed count one as charging the defendant with capital felony on the basis of an accessory theory of liability. Because Judge Gormley did not find probable cause with respect to Smith, the purported principal, on the charge of capital felony, the

[13] In *Hope*, the state, in effect, conceded that it had no additional evidence that McGann had committed capital felony other than the evidence it had presented in McGann's trial. *State* v. *Hope*, supra, 203 Conn. 423–24.

trial court determined, on the basis of our statements in *Hope*, that the defendant could not properly be charged as an accessory to capital felony. Second, the trial court equated Judge Gormley's finding of no probable cause with respect to Smith with our conclusion in *McGann* that McGann was not an assassin for hire within the meaning of § 53a-54b (2). The trial court concluded that Judge Gormley's finding of no probable cause had the same preclusive effect on what it believed to be the state's accessory case against the defendant that our conclusion in *McGann* had on the state's accessory case against Hope.

We conclude that the trial court's reliance on *Hope* was misplaced for several reasons. First, *Hope* is distinguishable from the present case because Judge Gormley's finding of no probable cause with respect to Smith on the capital felony charge is not equivalent to our conclusion in *McGann* that McGann was not a hired assassin. Our conclusion in *McGann* was a conclusion of law that, on the basis of the evidence presented in McGann's trial, McGann did not commit the offense of capital felony. That conclusion was binding on all lower courts. Judge Gormley's finding of no probable cause with respect to Smith on the capital felony charge, however, was binding only with respect to Smith. Judge Gormley found that there was no probable cause to believe, on the basis of the evidence presented to him, that Smith had committed the offense of capital felony. The only binding effect that finding had was that the state could not thereafter charge Smith with capital felony unless, at a later date, it was able to persuade a judge that probable cause existed to believe that Smith had committed capital felony. See General Statutes § 54-46a.[14] Judge Gormley's finding was not, however, a

[14] General Statutes § 54-46a provides: "Probable cause hearing for persons charged with crimes punishable by death or life imprisonment. (a) *No person charged by the state, who has not been indicted by a grand jury prior to May 26, 1983, shall be put to plea or held to trial for any crime punishable*

determination that, as a matter of law, Smith did not commit the offense of capital felony, nor would it preclude the state, in its case against the defendant, from attempting to prove beyond a reasonable doubt that Smith had committed capital felony.

Moreover, even if we were to assume for the sake of argument that Judge Gormley's finding of no probable cause with respect to Smith on the capital felony charge had the same preclusive effect that our *McGann* finding had in *Hope, Hope* would operate to preclude the state from prosecuting the defendant for capital felony only if (1) the state's entire case against the defendant was

*by death or life imprisonment unless the court at a preliminary hearing determines there is probable cause to believe that the offense charged has been committed and that the accused person has committed it.* The accused person may knowingly and voluntarily waive such preliminary hearing to determine probable cause.

"(b) Unless waived by the accused person or extended by the court for good cause shown, such preliminary hearing shall be conducted within sixty days of the filing of the complaint or information in Superior Court. The court shall be confined to the rules of evidence, except that written reports of expert witnesses shall be admissible in evidence and matters involving chain of custody shall be exempt from such rules. No motion to suppress or for discovery shall be allowed in connection with such hearing. The accused person shall have the right to counsel and may attend and, either individually or by counsel, participate in such hearing, present argument to the court, cross-examine witnesses against him and obtain a transcript of the proceedings at his own expense. At the close of the prosecution's case, if the court finds that, based on the evidence presented by the prosecution, probable cause exists, the accused person may make a specific offer of proof, including the names of witnesses who would testify or produce the evidence offered. The court shall not allow the accused person to present such evidence unless the court determines that such evidence would be sufficient to rebut the finding of probable cause.

"(c) If, from the evidence presented pursuant to subsection (b) of this section, it appears to the court that there is probable cause to believe that the accused person has committed the offense charged, the court shall so find and approve the continuance of the accused person's prosecution for that offense. *A determination by the court that there is not probable cause to require the accused person to be put to trial for the offense charged shall not operate to prevent a subsequent prosecution of such accused person for the same offense.*" (Emphasis added.)

predicated on accessory liability, or (2) the state had no evidence to prove that Smith committed capital felony other than the evidence presented to Judge Gormley in the probable cause hearing. Neither of these conditions exists in the present case.

First, the state's case against the defendant on the capital felony charge is not predicated solely on an accessory theory of liability. Rather, only one element of the state's case against the defendant, the murder element, is dependent upon accessory liability. Although Judge Gormley found no probable cause with respect to Smith on the capital felony charge, he did find probable cause with respect to Smith on the murder charge.

In addition, the evidence that the state intended to produce in its case against the defendant was different from the evidence that the state produced in Smith's probable cause hearing. Specifically, in its case against the defendant, the state intended to introduce into evidence the defendant's confession, which, because of a potential problem under *Bruton* v. *United States*, supra, 391 U.S. 123, had not been produced for Judge Gormley at Smith's probable cause hearing. In Smith's probable cause hearing, the state introduced into evidence only Smith's confession, which differed in various aspects from the defendant's confession. Thus, in the state's case against the defendant, the state intended to introduce evidence that Judge Gormley did not have the benefit of hearing when he made his probable cause decision with respect to Smith. For the foregoing reasons, *State* v. *Hope*, supra, 203 Conn. 420, is not applicable to the present case.

### III

Finally, we deem it necessary to address what appears to be one other basis upon which the trial court dismissed count one, which may become relevant on

remand. In the trial court's articulation of its decision, the court asserted that it could not properly rule on the motions filed by the defendant concerning the imposition of the death penalty because of what it considered to be the vague and confusing charging language of count one.[15] See footnote 10 of this opinion. Specifically, the defendant had filed a motion for a pretrial determination that the defendant was ineligible for the imposition of the death penalty. In that motion, the defendant had cited General Statutes § 53a-46a (h),[16] which prohib-

[15] On April 4, 1997, the trial court filed an articulation of its alternative basis for dismissing count one. In that document, the trial court stated: "As the state was informed on numerous occasions during the proceedings, the language in the pleading directly impacted other motions on which the court had ruled and was attempting to rule, including the disproportionality argument contained in the motion for pretrial judicial determination that the defendant [is] ineligible for death penalty. While the state steadfastly maintained that the defendant was charged as a principal despite utilizing the charging language from the accessory statute, this court could not render a reasoned decision. . . . Despite the vagueness of the capital felony charge in count one, the state refused to specify its theory of liability. This court believes that the defective pleading of count one mandated its dismissal pursuant to Practice Book § 815 (2)."

[16] General Statutes § 53a-46a provides in relevant part: "Imposition of sentence for capital felony. Hearing. Special verdict. Mitigating and aggravating factors. Factors barring death sentence. (a) A person shall be subjected to the penalty of death for a capital felony only if a hearing is held in accordance with the provisions of this section.

"(b) For the purpose of determining the sentence to be imposed when a defendant is convicted of or pleads guilty to a capital felony, the judge or judges who presided at the trial or before whom the guilty plea was entered shall conduct a separate hearing to determine the existence of any mitigating factor concerning the defendant's character, background and history, or the nature and circumstances of the crime, and any aggravating factor set forth in subsection (i). Such hearing shall not be held if the state stipulates that none of the aggravating factors set forth in subsection (i) of this section exists or that any factor set forth in subsection (h) exists. Such hearing shall be conducted (1) before the jury which determined the defendant's guilt, or (2) before a jury impaneled for the purpose of such hearing if (A) the defendant was convicted upon a plea of guilty; (B) the defendant was convicted after a trial before three judges as provided in subsection (b) of section 53a-45; or (C) if the jury which determined the defendant's guilt has been discharged by the court for good cause, or (3) before the court, on motion of the defendant and with the approval of the court and the consent of the state. . . .

its a court from imposing the death penalty on a defendant who has been convicted of a capital felony if a

"(e) The jury or, if there is no jury, the court shall return a special verdict setting forth its findings as to the existence of any factor set forth in subsection (h), the existence of any aggravating factor or factors set forth in subsection (i) and whether any aggravating factor or factors outweigh any mitigating factor or factors found to exist pursuant to subsection (d). . . .

"(g) *If the jury or, if there is no jury, the court finds that (1) any of the factors set forth in subsection (h) exist,* or (2) none of the aggravating factors set forth in subsection (i) exists or (3) one or more of the aggravating factors set forth in subsection (i) exist and one or more mitigating factors exist, but the one or more aggravating factors set forth in subsection (i) do not outweigh the one or more mitigating factors, *the court shall impose a sentence of life imprisonment without the possibility of release.*

"(h) *The court shall not impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict, as provided in subsection (e), that at the time of the offense (1)* he was under the age of eighteen years or (2) his mental capacity was significantly impaired or his ability to conform his conduct to the requirements of law was significantly impaired but not so impaired in either case as to constitute a defense to prosecution or *(3) he was criminally liable under sections 53a-8, 53a-9 and 53a-10 for the offense, which was committed by another, but his participation in such offense was relatively minor, although not so minor as to constitute a defense to prosecution* or (4) he could not reasonably have foreseen that his conduct in the course of commission of the offense of which he was convicted would cause, or would create a grave risk of causing, death to another person.

"(i) The aggravating factors to be considered shall be limited to the following: (1) The defendant committed the offense during the commission or attempted commission of, or during the immediate flight from the commission or attempted commission of, a felony and he had previously been convicted of the same felony; or (2) the defendant committed the offense after having been convicted of two or more state offenses or two or more federal offenses or of one or more state offenses and one or more federal offenses for each of which a penalty of more than one year imprisonment may be imposed, which offenses were committed on different occasions and which involved the infliction of serious bodily injury upon another person; or (3) the defendant committed the offense and in such commission knowingly created a grave risk of death to another person in addition to the victim of the offense; or (4) the defendant committed the offense in an especially heinous, cruel or depraved manner; or (5) the defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value; or (6) the defendant committed the offense as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value; or (7) the defendant committed the offense with an assault weapon, as defined in section 53-202a." (Emphasis added.)

jury or the court "finds by a special verdict . . . that at the time of the offense . . . [the defendant] was criminally liable under sections 53a-8, 53a-9 and 53a-10 for the offense, which was committed by another, but his participation in such offense was relatively minor, although not so minor as to constitute a defense to prosecution . . . ." On the basis of the evidence disclosed by the state, the defendant argued, inter alia, that the defendant's criminal liability, if he was liable at all, was accessorial in nature and relatively minor. The defendant therefore sought a determination by the trial court that, on the basis of § 53a-46a (h), he was ineligible for the death penalty.

The trial court dismissed count one, in part, because the court found the count, and the state's representations concerning it, to be confusing and vague on the question of whether count one charged the defendant as a principal or as an accessory, an issue that was relevant to the disposition of the defendant's motion. We conclude, however, that the trial court's concern with disposing of the defendant's motion prior to trial was misplaced.

The defendant has not cited and we have found no authority aside from the constitutionally required hearing in probable cause; see General Statutes § 54-46a; that entitles a defendant to a pretrial judicial determination of ineligibility for the death penalty. Moreover, "[u]nder Connecticut law, a defendant may be convicted as an accessory even though he was charged only as a principal as long as the evidence presented at trial is sufficient to establish accessorial conduct." (Internal quotation marks omitted.) *State* v. *Williams*, 220 Conn. 385, 388, 599 A.2d 1053 (1991); see also *State* v. *Fleming*, 198 Conn. 255, 268 n.15, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); *State* v. *Ferrara*, 176 Conn. 508, 513 n.2, 408 A.2d 265 (1979). Because the defendant was not entitled

432

to a death penalty determination prior to trial, and because the capital felony count, when coupled with the statement of essential facts, adequately notified the defendant of the state's theory of liability against him, the trial court's concern with whether count one charged the defendant as a principal or an accessory was premature.

On remand, after the close of evidence, the trial court will have to determine whether a jury instruction on accessory liability is warranted in view of the evidence presented during the trial and the state's theory of liability in the case. Furthermore, if the defendant is convicted of capital felony and the state seeks the death penalty, the trial court will have to fashion a jury instruction, pursuant to § 53a-46a, that will allow the penalty phase jury to determine whether the defendant's participation in the capital felony was so minor as to constitute a mitigating factor that precludes the imposition of the death penalty.

The dismissal of count one of the January 3, 1997 amended information is reversed and the case is remanded to the trial court with direction to reinstate that count and for further proceedings.

In this opinion the other justices concurred.