## STATE OF CONNECTICUT *v.* DARRYL LEE HARRELL
### (15328)

Peters, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued April 25—officially released August 13, 1996

*Harry Weller*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Joan Alexander*, assistant state's attorney, for the appellant (state).

*Kent Drager*, assistant public defender, for the appellee (defendant).

NORCOTT, J. The sole issue in this appeal is whether the term "murder" as used in the capital felony statute, General Statutes § 53a-54b,[1] includes unintentional mur-

---

[1] General Statutes § 53a-54b provides: "Capital felony. A person is guilty of a capital felony who is convicted of any of the following: (1) Murder of a member of the division of state police within the department of public safety or of any local police department, a chief inspector or inspector in the division of criminal justice, a sheriff or deputy sheriff, a constable who performs criminal law enforcement duties, a special policeman appointed under section 29-18, an official of the department of correction authorized by the commissioner of correction to make arrests in a correctional institution or facility, or any fireman, while such victim was acting within the scope of his duties; (2) murder committed by a defendant who is hired to commit the same for pecuniary gain or murder committed by one who is hired by the defendant to commit the same for pecuniary gain; (3) murder committed by one who has previously been convicted of intentional murder or of murder committed in the course of commission of a felony; (4) murder committed by one who was, at the time of commission of the murder, under sentence of life imprisonment; (5) murder by a kidnapper of a kidnapped person during the course of the kidnapping or before such person is able

der in addition to intentional murder. The state charged the defendant, Darryl Lee Harrell, with one count of arson in the first degree in violation of General Statutes § 53a-111, two counts of arson murder in violation of General Statutes § 53a-54d,[2] and one count of capital felony in violation of General Statutes § 53a-54b (8). The trial court dismissed the count of capital felony after determining that only an intentional murder can be a predicate murder under § 53a-54b (8), and that the state had failed to establish probable cause that the defendant had violated § 53a-54b (8). Pursuant to General Statutes § 54-96,[3] the state appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

The charges against the defendant stemmed from his alleged role in the arson of an apartment building that resulted in the deaths of two people. After a hearing in probable cause, the trial court, *Corrigan, J.*, found that probable cause existed to support the arson murder counts. With respect to the capital felony count, how-

to return or be returned to safety; (6) the illegal sale, for economic gain, of cocaine, heroin or methadone to a person who dies as a direct result of the use by him of such cocaine, heroin or methadone; (7) murder committed in the course of the commission of sexual assault in the first degree; (8) murder of two or more persons at the same time or in the course of a single transaction."

[2] General Statutes § 53a-54d provides: "Arson murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole."

[3] General Statutes § 54-96 provides: "Appeals by the state from superior court in criminal cases. Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

ever, the trial court concluded that, as a matter of law, only an intentional murder can be a predicate murder to a capital felony charge under § 53a-54b (8). The trial court then determined that, in light of the facts adduced at the hearing in probable cause, the counts of arson murder did not constitute "murder" under § 53a-54b (8) because there was no evidence to indicate the defendant's intent to cause the two deaths. Accordingly, the trial court concluded that "the [s]tate has failed to prove probable cause to hold the defendant on the charge of [c]apital [f]elony under . . . § 53a-54b (8)." Thereafter, the trial court, *Miano, J.*, dismissed the capital felony count and granted the state permission to appeal that ruling. This appeal followed.

On appeal, the state contends that the term "murder" in the capital felony statute is a generic term that broadly and unambiguously refers to alternate methods for committing the crime of murder, and thus encompasses unintentional as well as intentional conduct. The defendant contends, to the contrary, that the term "murder" unambiguously is limited to homicide in its most aggravated form, namely, intentional murder. The defendant contends, in the alternative, that the term "murder" is ambiguous and that this ambiguity must be resolved in his favor. We agree with the defendant's alternative argument, namely, that the term "murder" is sufficiently ambiguous that we must interpret it against the imposition of harsher punishment.[4] Accord-

---

[4] The defendant also contends that the state's interpretation of the capital felony statute would render that statute unconstitutional because "it reaches felony murders and arson murders [for] which the death penalty may not be imposed and it does not contain any mechanism for the jury to find the additional elements required before the death penalty may be constitutionally imposed on a person convicted of a capital offense through the mechanism of felony murder." Because we affirm the judgment of the trial court as a matter of statutory construction, we need not reach the constitutional issue raised by the defendant. See *State* v. *Metz*, 230 Conn. 400, 419–20, 645 A.2d 965 (1994); *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 572, 620 A.2d 118 (1993).

ingly, we conclude that the term "murder" in the capital felony statute may be properly applied only to intentional murder and does not encompass unintentional murder.

Our analysis of the issue of whether the reference to "murder" in the capital felony statute includes unintentional murder as well as intentional murder "is guided by well established principles of statutory construction. Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Burns*, 236 Conn. 18, 22–23, 670 A.2d 851 (1996); *State* v. *Spears*, 234 Conn. 78, 86–87, 662 A.2d 80 (1995).

We are also mindful of well established principles that govern the construction of penal statutes. "Courts must avoid imposing criminal liability where the legislature has not *expressly* so intended." (Emphasis added.) *State* v. *Breton*, 212 Conn. 258, 268–69, 562 A.2d 1060 (1989). Accordingly, "[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." (Internal quotation marks omitted.) *State* v. *Jones*, 234 Conn. 324, 340, 662 A.2d 1199 (1995); *State* v. *Brown*, 235 Conn. 502, 517, 668 A.2d 1288 (1995); *State* v. *Hinton*, 227 Conn. 301, 317, 630 A.2d 593 (1993).

Finally, in this case we are construing the capital felony statute. The resolution of this issue could result in the imposition of the death penalty on this defendant and on other defendants charged with similar offenses.

It is axiomatic that any statutory construction implicating the death penalty must be based on a conclusion that the legislature has clearly and unambiguously made its intention known. See *State* v. *Jones*, supra, 234 Conn. 340; *State* v. *Ross*, 230 Conn. 183, 200, 646 A.2d 1318 (1994), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *Breton*, supra, 212 Conn. 268–69. The rules of strict construction and lenity applicable to penal statutes generally are "especially pertinent to a death penalty statute such as § 53a-54b." *State* v. *McGann*, 199 Conn. 163, 177, 506 A.2d 109 (1986); *State* v. *Jones*, supra, 340. Keeping in mind these governing principles, we turn to the task of interpreting the term "murder" in the capital felony statute.

The capital felony statute sets forth with specificity the offenses that may form the basis of a charge of capital felony. See footnote 1. Under the express terms of all but one of the subdivisions of the capital felony statute, a defendant must commit a "murder" in order to violate the statute.[5] Absent from the text of the statute, however, is any clear indication whether a predicate murder under the statute may be unintentional as well as intentional.

The state invokes the felony murder and arson murder statutes; General Statutes §§ 53a-54c[6] and 53a-

---

[5] Subdivision (6) of § 53a-54b is the only subdivision of the capital felony statute that does not use the term "murder." Under that subdivision, a defendant may violate the capital felony statute by selling cocaine, heroin or methadone to someone who subsequently dies from ingesting the narcotic.

[6] General Statutes § 53a-54c provides: "Felony murder. A person is guilty of murder when, acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, sexual assault in the first degree, aggravated sexual assault in the first degree, sexual assault in the third degree, sexual assault in the third degree with a firearm, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants, except that in any prosecution under this section, in which the defendant was not the only participant in the underlying crime, it shall be an affirmative

54d;[7] as the basis for its claim that the term "murder" in the capital felony statute unambiguously encompasses unintentional murder. Specifically, the state contends that all three statutes apply similarly in the context of "murder" without limiting the term to intentional murder. The state then contends that because a specific intent is not required to violate the felony murder and arson murder statutes; see *State* v. *Dupree*, 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985) (arson murder); *State* v. *Young*, 191 Conn. 636, 639–44, 469 A.2d 1189 (1983) (felony murder); a specific intent is likewise not required for "murder" under the capital felony statute. We disagree.

Although the state's argument has certain linguistic appeal, we find the defendant's response to have equal force. The defendant argues that the use of the term "murder" in the capital felony statute, when read in conjunction with the use of the same term in other penal code provisions, does not evince an unambiguous intent on the part of the legislature to encompass unintentional murder within the meaning of the term "murder." The defendant contends that whenever the legislature has intended to include unintentional murder as a predicate murder under the capital felony statute, it has so provided unambiguously. Section 53a-54b (6) provides that a person is guilty of capital felony if that person is convicted of "the illegal sale, for economic gain, of cocaine, heroin or methadone to a person who dies as a direct result of the use by him of such

---

defense that the defendant: (1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

[7] See footnote 2.

cocaine, heroin or methadone . . . ." In subdivision (6) of § 53a-54b, the legislature omitted the term "murder" in defining an unintentional murder that is a predicate murder for a violation of the capital felony statute. The defendant argues that the linguistic difference between subdivision (6), the only subdivision of the capital felony statute that clearly refers to unintentional murder, and the other subdivisions of the capital felony statute, which expressly refer to "murder," reflects ambiguity as to the proper scope of the term "murder."[8]

In addition, the defendant asserts that the ambiguity in the term "murder" is further reflected in the evolution of the present capital felony statute. When the legislature enacted the capital felony statute in 1973; Public Acts 1973, No. 73-137, § 3; the legislature contemporaneously eliminated felony murder from the penal code; Public Acts 1973, No. 73-137, § 15;[9] and redefined "murder" so as to encompass only intentional murder. Public

---

[8] The state contends that if the term "murder" in the capital felony statute refers only to intentional murder, then the express reference to "intentional murder" in § 53a-54b (3) would render the term "intentional" superfluous. The defendant responds that the reference to "intentional murder" in § 53a-54b (3) serves to emphasize that a prior conviction of either intentional murder *or* felony murder may serve as a component part of the predicate murder under this subdivision.

[9] Public Acts 1973, No. 73-137, § 15, provides: "Sections 53a-46, 53a-54 and 53a-93 of the general statutes are repealed."

General Statutes (Rev. to 1972) § 53a-54 provided in relevant part: "Murder defined. Affirmative defenses. Evidence of mental condition. Classification. (a) A person is guilty of murder when . . . acting either alone or with one or more persons, he commits or attempts to commit robbery, burglary, kidnapping, arson, rape in the first degree, deviate sexual intercourse in the first degree, sexual contact in the first degree, escape in the first degree, or escape in the second degree and, in the course of and in furtherance of such crime or of flight therefrom, he, or another participant, if any, causes the death of a person other than one of the participants . . . ."

The legislature did not enact the arson murder statute until 1979. See Public Acts 1979, No. 79-570. Until the enactment of the arson murder statute, arson murder had been one method of committing felony murder. See General Statutes (Rev. to 1972) § 53a-54 (a) (2).

Acts 1973, No. 73-137, § 2.[10] Thus, at the time when the legislature enacted the capital felony statute, intentional murder was the only form of murder expressly recognized in the penal code. The defendant argues that although the legislature subsequently enacted the felony murder statute in 1974 in order to restore the crime of felony murder to the penal code; Public Acts 1974, No. 74-186; see *State* v. *Chicano*, 216 Conn. 699, 718–19, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991); the express limitation of "murder" to intentional murder when the legislature enacted the capital felony statute is a strong indication that the term "murder" in the capital felony statute is limited to intentional murder.

To counter the restrictive definition of "murder" contained in the penal code when the legislature enacted the capital felony statute, the state points to provisions of the capital felony scheme enacted in 1973 that it contends evince the legislature's intent that "murder" in the capital felony statute encompasses both unintentional and intentional murder. The state first points to § 53a-54b (6), which encompasses unintentional murder as a predicate murder for a violation of the capital felony statute. Subdivision (6) of § 53a-54b, however, unlike the other subdivisions of the capital felony statute, makes no reference to "murder." The defendant argues that the inclusion of § 53a-54b (6) in the capital felony statute in 1973, therefore, provides little support for the state's claim that, when the legislature enacted the capital felony statute, the term "murder" included unintentional murder, in contravention of the explicit definition of "murder" contained in the penal code at that time.

---

[10] Public Acts 1973, No. 73-137, § 2, provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes suicide by force, duress or deception . . . ."

The state also notes that one of the statutory mitigating factors enacted contemporaneously with the capital felony statute contemplated the inclusion of unintentional murder in addition to intentional murder under the statute. See Public Acts 1973, No. 73-137, § 4 (f).[11] The state presents a forceful argument that this statutory mitigant, which applies if a defendant "could not reasonably have foreseen that his conduct in the course of commission of the offense of which he was convicted would cause, or would create a grave risk of causing, death to another person"; General Statutes § 53a-46a (g) (5); contemplates a charge of capital felony predicated upon unintentional murder rather than murder involving a specific intent.[12] While we are persuaded that the state's argument raises ambiguity as to whether the legislature intended to limit "murder" in the capital felony statute to intentional murder, the state's argument, however, does not definitively resolve this issue in its favor. Although the state's argument based on the language of the mitigating factor provision merits strong consideration, we find that the defendant's argument based on the fact that intentional murder was the only form of "murder" expressly recognized under the penal

[11] Public Acts 1973, No. 73-137, § 4 (f), provides in relevant part: "The court shall not impose the sentence of death on the defendant if the jury or, if there is no jury, the court finds by a special verdict . . . that at the time of the offense . . . he could not reasonably have foreseen that his conduct in the course of commission of the offense of which he was convicted would cause, or would create a grave risk of causing, death to another person." See General Statutes § 53a-46a (g) (5).

[12] We note that the state concedes that, even if the mitigating factor currently codified at § 53a-46a (g) (5) applied only to unintentional conduct, the mitigating factor would not be a nullity because it could apply to a charge of capital felony predicated on a violation of § 53a-54b (6). We express no opinion as to whether the application of the mitigating factor contained in § 53a-46a (g) (5) is limited to a charge of capital felony predicated on § 53a-54b (6). Even if we were to conclude that the statutory mitigant is limited to a violation of § 53a-54b (6), that conclusion nevertheless does not definitively resolve the ambiguity in the term "murder" contained in the capital felony statute.

code at the time of the enactment of the capital felony statute merits equal consideration. As a result, we cannot conclude, from the language of the foreseeability-based mitigating factor, that the legislature *unequivocally* intended the term "murder" in the capital felony statute to include unintentional murder as well as intentional murder.

Finally, in support of its claim that the term "murder" in the capital felony statute encompasses both unintentional and intentional murder, the state points to the legislative history behind the creation of the capital felony, felony murder and arson murder statutes. Our review of the relevant legislative history, however, fails to resolve in an unequivocal manner the ambiguity as to the proper scope of the meaning of the term "murder" in the capital felony statute.

After a careful consideration of the parties' arguments concerning the language of the capital felony statute and the statute's relationship to other provisions of the penal code, and a review of the relevant legislative history, we are persuaded that it is not apparent that the legislature unambiguously intended both intentional and unintentional murder to fall within the meaning of the term "murder" in the capital felony statute. In light of the ambiguity surrounding the proper scope of the definition of "murder," we must construe that term in favor of the defendant. See, e.g., *State* v. *Jones*, supra, 234 Conn. 340; *State* v. *Hinton*, supra, 227 Conn. 317. When, as in this case, the imposition of the death penalty is the possible consequence of our decision, we must not toy with competing, plausible interpretations of a statutory penal scheme. In the present case, the state has failed to establish the unambiguous indication of legislative intent necessary to overcome the principles of strict construction and lenity that guide any interpretation of the death penalty statute.

We therefore hold that the term "murder" in the capital felony statute may be applied only to intentional murder. Accordingly, the trial court properly concluded that, under the circumstances of this case, the two counts of arson murder could not serve as predicate murders for a charge of capital felony under § 53a-54b (8).

The judgment is affirmed.

In this opinion the other justices concurred.