[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15045
The defendant, Errol Dehaney, by and through his attorneys has moved this court to exclude and/or strike and/or dismiss the aggravating factors alleged by the state as they relate to the information charging the defendant with capital felony murder.[1] Subsumed within the defendant's motion and explicitly in the state's motion in limine[2] is a request for this court to indicate prior to trial whether or not the aggravating factors alleged by the state must be proven as to each individual murder in the multiple murder count. The state has also expressly requested that this court indicate whether the jury will be instructed that it must unanimously agree that a statutory mitigating factor exists in order for that mitigating factor to be dispositive without weighing under General Statutes § 53a-46a.
HELD: 1) The defendant's motion to exclude and/or strike and/or dismiss is denied.
2) The aggravating factors alleged by the state do not have to be proven as to each murder in a multiple murder charge. So long as the state has proven beyond a reasonable doubt that at least one of the murders was aggravated, then the state has met its burden of proving the existence of the aggravating factor.
3) The jury must unanimously agree that a factor listed in subsection (h) of § 53a-46a exists in order for that factor to be dispositive as a bar to the death penalty.[3] In the event that there is no jury unanimity, it will be at the discretion of the trial judge to either declare a mistrial or "acquit" the defendant of the death penalty and impose a life sentence.
 BACKGROUND
The defendant, Errol Dehaney was charged with capital felony murder for the shooting deaths of his wife Shenavia Dehaney and his two children Shantelique and Errol Dehaney, Jr. The defendant faces three counts of capital felony murder, three counts of intentional murder and two counts of injury to a child.[4]
Count one of the information charges the defendant with a violation of General Statutes § 53a-54b(8), "murder of two or more persons at the same time or in the course of a single transaction." Additionally, the state alleges that the capital felony murder charge in count one is aggravated:[5] 1) "The CT Page 15046 defendant committed the offense in an especially heinous, cruel or depraved manner, Connecticut General Statutes §53a-46a(h)(4);"[6] and 2) "The defendant knowingly created a grave risk of death to another person, Connecticut General Statutes § 53a-46a(h)(3)."[7]
The defendant, in raising his motion to exclude and/or strike and/or dismiss the aggravating factors, has asked this court to conduct a preliminary factual inquiry into the evidentiary sufficiency of the aggravating factors. The defendant "asserts that his motion should be granted because there exists an insufficiency of evidence or cause to justify death qualifying the jury in this capital felony prosecution, because there is insufficient evidence of either aggravating factor, and because there has been no finding of probable cause with regard to either such factors, nor could there be based on the evidence in this case."[8]
The defendant claims that because the aggravating factors must be assessed in light of each individual murder in a multiple murder charge, the state cannot possibly meet its evidentiary burden. Because the state cannot meet its burden, the defendant claims, he is not eligible for the death penalty. Therefore, to proceed with a death qualified jury under these circumstances, he argues, would be unjust. First the defendant points out that the death penalty is fundamentally different from any other form of punishment. He further claims that death qualifying a jury is costly, time consuming and tends to result in a jury prone to convict. Finally, he relies upon the due process guarantees of the United States and Connecticut Constitutions to support his claim that a pretrial review of the aggravating factors is warranted.
 DISCUSSION I. GENERALLY
This court does not have the authority to dismiss aggravating factors prior to trial based on claims of evidentiary insufficiency. While the defendant claims that this court does have the authority to entertain a pretrial review of the sufficiency of the evidence underlying the aggravating factors; at the same time the defendant concedes "that there is no specific provision in our court rules or statutes relating to the dismissal of aggravating factors prior to trial. . . ." DEF'SCT Page 15047MEM. OF LAW, p. 6. Nevertheless, the defendant cites the New Jersey case State v. McCrary, 478 A.2d 339 (N.J. 1984), as authority for the proposition that this Court could invoke its "inherent authority" to conduct the requested review. DEF'S MEMOF LAW, pp. 3-4. The defendant's claim is rejected.
 II. NO AUTHORITY TO CONDUCT THE REVIEW
A. CONSTITUTIONAL AUTHORITY
Constitutional principles bar this court from conducting the review requested by the defendant. "The separation of powers provision of article second of the Connecticut constitution provides in relevant part: `The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another.' `The primary purpose of this constitutional doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . [Thus, the separation of powers doctrine serves a dual function: it limits the exercise of that power within each branch, yet ensures the independent exercise of that power. . . . [I]n deciding whether one branch's actions violate the constitutional mandate of the separation of powers doctrine, the court will consider if the actions constitute: (1) an assumption of power that lies exclusively under the control of another branch; or (2) a significant interference with the orderly conduct of the essential functions of another branch.'. . . ." (Internal citations omitted.) State v. Kinchen, 243 Conn. 690, 698-99
(1998).
In Connecticut, the Office of the State's Attorney resides in the executive branch of government[9], not the judicial branch.[10] "`There can be no doubt that [t]he doctrine of separation of powers requires judicial respect for the independence of the prosecutor.' . . . Massameno v. StatewideGrievance Committee, [234 Conn. 539, 574, 663 A.2d 317 (1995)]. Prosecutors, therefore, have `a wide latitude and broad discretion in determining when, who, why and whether to prosecute for violations of criminal law.' . . . State v. Corchado,200 Conn. 453, 460 (1986). This broad discretion, which necessarily CT Page 15048 includes `deciding which citizens should be prosecuted and for what charges they are to be held accountable'; Massameno v.Statewide Grievance Committee, supra, 575; `rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.' See Wayte v. United States,470 U.S. 598, 607-08 (1985); United States v. Armstrong,134 L.Ed.2d 687 (1996).
For these reasons, `unless constitutional or other compelling reasons require otherwise, [the Connecticut Supreme Court will] abstain from setting policy for the performance of the prosecutorial function.' State v. Ellis, 197 Conn. 436, 478,497 A.2d 974 (1985); see State v. Haskins, 188 Conn. 432, 474,450 A.2d 828 (1982)." State v. Kinchen, supra,243 Conn. 699-701; see also State v. Carr, 172 Conn. 608, 610-11 (1977);State v. Dills, 19 Conn. App. 495, 500 (1989).
 B. STATUTORY AUTHORITY
As the defendant correctly noted in his brief, there are no court rules or statutory provisions authorizing Connecticut trial courts to dismiss aggravating factors prior to trial. There are, however, specific constitutional, statutory and practice book provisions which establish limited judicial oversight of prosecutions. The Constitution of Connecticut, article first, §8[11] and General Statutes § 54-46a[12] mandate that all persons charged with crimes punishable by death or life imprisonment are entitled to a hearing in probable cause conducted by a judge of the superior court.[13] Once probable cause has been established, though, the right of the court to intervene is significantly restricted. Practice Book § 41-9
(formerly § 816) affirmatively acts to limit potential interference of courts by directing that "[n]o defendant who is charged with a crime punishable by death or life imprisonment for which probable cause has been found at a preliminary hearing pursuant to Gen. Stat. § 54-46a or who has been arrested pursuant to a warrant may make a motion under paragraphs (5) [Insufficiency of evidence or cause to justify the bringing or continuing of such information or the placing of the defendant on trial] or (9) [Any other grounds] . . . of section 41-8 [Motion to Dismiss]." Practice Book § 41-9 specifically rejects the type of factual insufficiency claim that the defendant is making in this case.[14] Additionally, General Statutes § 53a-46a, rests exclusive authority to abort a penalty phase hearing in the hands of the state. According to General Statutes § 53a-46a: "For the CT Page 15049 purpose of determining the sentence to be imposed when a defendant is convicted or pleads guilty to a capital felony, the judge . . . shall conduct a separate hearing. . . . Suchhearing shall not be held if the state stipulates that none of the aggravating factors . . . exists or that any factor set forth in subsection (h) exists." (Emphasis added.) The statute makes no provision for the courts or any other party to prevent the hearing from taking place.
The defendant, however, claims that General Statutes § 54-56
vests this court with the power to dismiss the aggravating factors.[15] General Statutes § 54-56 provides that "[a]ll courts having jurisdiction of criminal cases shall at all times have jurisdiction and control over information and criminal cases pending therein and may, at any time, upon motion by the defendant, dismiss any information and order such defendant discharged if, in the opinion of the court, there is notsufficient evidence or cause to justify bringing or continuing of such information or the placing of the person accused therein on trial." (Emphasis added.) In this case, however, the defendant is not seeking to have the capital felony charge dismissed. Instead, he is seeking to bar the state from presenting evidence on the alleged aggravating factors by having the aggravating factors dismissed. Even assuming, arguendo, that General Statutes § 54-56 can be used to achieve such a purpose, that does not mean that the statute is applicable in this case.
"The purpose of [§ 54-56] is `"to prevent unchecked power by the prosecuting attorney." State v. Carroll, 13 Conn. Sup. 112, (1944); see also State v. Bellamy, 4 Conn. App. 520, 527
(1985); State v. Reinosa, 29 Conn. Sup. 117, 118 (1970)';State v. Corchado, supra. Consistent with that purpose, [the Connecticut Supreme Court has] held that the evidentiary insufficiency prong of 54-56 `does not apply where a judge has found probable cause or authorized the issuance of an arrest warrant. In such a case, the judicial authority's considered judgment has been interposed between the power of the prosecuting attorney and the rights of a defendant. The prosecutorial power is not unchecked; it has already been subject to the prior check of the judicial authority's "independent determination that probable cause exists as to each element of every crime charged." (Internal citations omitted) State v. Dills, 19 Conn. App. 495,501 (1989). As noted previously, the defendant was entitled to a probable cause determination but he chose to waive his hearing.[16]
CT Page 15050
 C. CASE LAW AS AUTHORITY
In addition to relying on statutory provisions, the defendant cites several cases to support his claim that this court has the authority to conduct a pre-hearing review of the evidence. In Connecticut, the defendant cites State v. Patterson, Superior Court, judicial district of Hartford-New Britain, Docket No. 53430 (October 5, 1988, Hammer, J.); State v. Shillinsky, Superior Court, judicial district of Hartford-New Britain, Docket No. 50469 (March 19, 1985, Hammer, J.); and State v.Gonzalez, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 30028 (September 9, 1985, Nigro, J.). However, Patterson, Shillinsky and Gonzalez, are neither binding nor persuasive in this case[17].
In Patterson the state agreed to the pretrial determination[18] and the trial court reluctantly acceded to the agreement, noting that such pretrial determinations should not customarily be done. Transcript, Patterson, No. 53430 (October 5, 1988). The defendant in Shillinsky also asked the court to dismiss the heinous, cruel or depraved aggravating factor because he felt that the circumstances of the case did not warrant it; the court refused to conduct the review. The court, without objection from the state, did review the legal sufficiency of another alleged aggravating factor on the ground that it was an element of the crime and not an aggravating factor and found that it was not an aggravating factor. Transcript,Shillinsky, No. 50469 (March 19, 1985, Hammer, J.). Finally,Gonzalez, is not persuasive because it is relies on State v.McCrary, 478 A.2d 339 (N.J. 1984), as authority for the proposition that the courts in Connecticut can invoke inherent authority to conduct pretrial reviews. State v. McCrary is a New Jersey case and is not binding authority. It is not persuasive authority either because New Jersey's approval of the invocation of inherent authority by courts was in response to a capital sentencing scheme in New Jersey that differs markedly from Connecticut's sentencing scheme.
In support of his position, the defendant in this case also cites State v. McCrary directly. In McCrary, the court was called upon by the defendant to review the sufficiency of the state's evidence as it pertained to the alleged aggravating factors in his prosecution for "knowing murder." The state claimed that it had prosecutorial discretion in charging; StateCT Page 15051v. McCrary, supra, 478 A.2d 342; and that the court's involvement would amount to a violation of the separation of powers doctrine. Id., 342-43. The state also pointed to the lack of statutory authority as indicative of the legislative intent to prevent judicial interference. Id., at 343. Nevertheless, the court rejected the state's arguments.
The court invoked its inherent authority to "fashion remedies" as a means to conduct a pretrial review of the evidentiary sufficiency of the aggravating factors. The court pointed out that in New Jersey, the prosecutors are required only to provide notice of the aggravating factors, and that "[t]he code contains no requirement for a probable cause determination of whether a homicide case should proceed as a capital case."State v. McCrary, supra, 478 A.2d 343. Because of the unchecked charging power of the prosecutor, the court found that "[s]ome judicial oversight is required to ensure at the very least that the proceeding contemplated by the prosecutor's notice not be set in motion without justifiable cause." Id., 344.
Connecticut has more extensive prosecutorial checks, and as such does not need to provide additional judicial oversight to prevent unchecked prosecutorial zeal. Connecticut provides for notice of aggravating factors and, unlike New Jersey, has provisions for pretrial probable cause determinations. Those provisions are not only in Connecticut's General Statutes, but defendants have a state constitutional right to a probable cause hearing whenever faced with life imprisonment or death as a penalty.[19] In State v. Solek, the trial court dismissed a capital felony count, due in part to the defendant's assertion that pursuant to § 53a-46a(h), he was ineligible for the death penalty. The Supreme court in State v. Solek, 242 Conn. 409
(1997), reversed the trial court's dismissal and noted as part of its findings that it had "found no authority aside from theconstitutionally required hearing in probable cause; see§ 54-46a; that entitles a defendant to a pretrial judicial determination of ineligibility for the death penalty." The defendant's attempt to dismiss the findings of the Supreme Court as "at best, dicta" in favor of the McCrary analysis, is an ineffective attempt at splitting hairs.[20] The capital sentencing scheme in Connecticut is narrowly tailored — far more so than in New Jersey. There are prosecutorial checks such as notice, probable cause hearings and motions for judgment of acquittal.[21] There are also judicial checks. Connecticut's practice book specifically bars courts from granting defendants' CT Page 15052 motions to dismiss for insufficiency of the evidence. Thus, theMcCrary analysis is not applicable to the Connecticut courts.McCrary approves of pretrial review "in limited circumstances;"State v. McCrary, supra, 478 A.2d 344; whereas the Connecticut Supreme Court does not authorize or approve of the pretrial review that the defendant is seeking. State v. Solek, supra,242 Conn. 431-32.
 III. AGGRAVATING FACTORS NEED APPLY TO ONLY ONE MURDER IN A MULTIPLE MURDER CHARGE
The defendant's claim that each murder making up a multiple murder, 53a-54(b)(8), needs to be aggravated in order for the defendant to be eligible for the death penalty is inconsistent with statutory construction, common sense and public policy. The defendant contends that those trial courts which have addressed this issue have consistently found in the defendant's favor. However, the state correctly points out that the defendant's claim is not entirely valid. At best, the findings are ambiguous. Thus, this court respectfully disagrees with its colleagues who have held that the state must prove that each murder is aggravated. It is the opinion of this court that those decisions relied upon by the defendant do not serve as persuasive authority.
The defendant cites State v. Griffin, Superior Court, judicial district of Middlesex, Docket No. 126985 (Miano, J.);State v. Correa, Superior Court, judicial district of Hartford-New Britain, Docket No. 406234 (Freed, J.); State v.Diaz-Marrero, Superior Court, Docket No. 153929 (Koletsky, J.), and State v. Breton, 212 Conn. 258, (Heiman, J.) (Breton I), as cases which support his position.[22] All four courts instructed that in order for the state to prove that the capital felony was aggravated, the state had to establish that each murder making up the multiple murder was aggravated. However, reading the transcripts is not illuminating as to the reasons for the courts so instructing the juries.
In addition to pointing out this defect in the defendant's argument, the state, cites State v. Wood, Superior Court, judicial district of Hartford-New Britain, Docket No. 48720 (July 24, 1984, Hammer, J.) and State v. Breton, 235 Conn. 206, 220
n. 15 (1995) (Breton II) to further illustrate the inconsistency underlying this issue. In State v. Wood, the court instructed the jury that if it found that both or CT Page 15053either killings were aggravated then the state met its burden of proving aggravation. While State v. Breton, 235 Conn. 206,220 n. 15 (1995) (Breton II) did reach the Connecticut Supreme Court, the Court decided that it did not need to address this issue.[23] Given the lack of persuasive authority, to resolve this issue, it is necessary to look to principles of statutory construction and logic.
Because the role of the aggravating factor is at issue, it is first necessary to determine what role the aggravating factor plays in Connecticut's capital sentencing scheme. Through General Statutes § 53a-46a[24] "the legislature has established a three-tiered pyramid in which each tier narrows the class of defendants that may be found eligible for the death penalty. At the first tier above the base of the pyramid, our statute separates capital felony homicides from other homicides, and authorizes bifurcated death penalty hearings only for those who have been found guilty of or have pleaded guilty to a capital felony. At the second tier, the statute further limits the death penalty by requiring the sentencer to find, beyond a reasonable doubt, the existence of at least one statutorily delineated aggravating factor. At the third and final tier, our statute separates, from all cases in which a penalty of death may be imposed, those cases in which it shall be imposed. . . ." (Internal citations omitted.) State v. Ross, 230 Conn. 183,236-37 (1994). There are nine crimes which are classified as capital felonies,[25] and only seven possible aggravants.[26]
"[The] aggravating [factors] . . . genuinely narrow the class of persons eligible for the death penalty and . . . reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens,462 U.S. 862, 8.77 (1983), cited in State v. Breton, supra,212 Conn. 265.
This capital sentencing scheme is to be construed like any other penal statute, strictly against the state with ambiguities resolved in favor of the defendant. State v. Harrell,238 Conn. 828, 832 (1996). Because in this case the court is construing the capital felony statute which could result in a death penalty for this defendant "any statutory construction implicating the death penalty must be based on a conclusion that the legislature has clearly and unambiguously made its intention known. The rules of strict construction and lenity applicable to penal statutes generally are especially pertinent to a death penalty statute such as § 53a-54b." (Citations omitted.) Id., 833. Keeping in CT Page 15054 mind these principles, it is nevertheless, appropriate when discerning the intent of the legislature, not only to look to the words of the statute, but to look as well to the legislative history, circumstances surrounding the enactment, the policy it was designed to implement, its relationship to other laws and common law principles governing the same general subject matter.State v. Solek, supra, 242 Conn. 420. However, courts, when construing statutes to the benefit of defendants, will "avoid constructions that lead to absurd, unworkable or bizarre results," Id., 421, or results which frustrate the legislative intent. State v. Ledbetter, 240 Conn. 317, 330 (1997); Statev. Ellis, supra, 197 Conn. 445.
An aggravating factor is relevant to how the defendant committed the offense. General Statutes § 53a-46a(i)(3), (4). The "offense" at issue in this case is the "murder of two or more persons at the same time or in the course of a single transaction." General Statutes § 53a-54b(8). The defendant argues that the language of the capital felony statutes, § 53a-54b(8) and § 53a-46a(i)(3), (4), require that each underlying murder must be aggravated in order for this "offense" to be aggravated.
The fact that the defendant killed two or more persons in the course of a single transaction is relevant only to the narrowing process of Connecticut's capital sentencing scheme. A single intentional murder does not satisfy the elements of the capital felony statute. General Statutes § 53a-54a. A defendant convicted of one intentional murder is not eligible for the death penalty; there must be something more. Once a defendant intentionally murders more than one person at one time, then that defendant has committed a crime that qualifies as a capital felony and carries the potential punishment of death. Whether the defendant kills two people or twenty is of no consequence because in either case he will be charged with a violation of the same statute, § 53a-54(b)(8). His status as a multiple murderer is what warrantshis eligibility for the ultimate penalty society has to impose. Even then, there are no guaranties that the death penalty will be imposed. In addition to committing the capital felony the defendant must commit it in one of seven ways. General Statutes §53a-46a(i)(1)-(7). If the capital felony is not committed in one of the enumerated ways, the defendant can only be sentenced to the alternative punishment of life in prison without possibility of release. The death penalty will no longer be an option.
Requiring the state to prove that each murder was CT Page 15055 aggravated would be contrary to a logical reading of the statute and would result in absurd and bizarre results. The type of multiple murder that the capital felony statute refers to is multiple murder that occurs as one transaction. The statute would not apply to a case in which a defendant kills ten people over ten years, one each year. It is the multiple murder in a "single transaction" which delineates the crime of capital felony multiple murder. This "transaction" falls into the same category as other single murders such as murder in the course of a sexual assault, § 53a-54b(7), or murder of a kidnaped person by the kidnapper in the course of a kidnapping. § 53a-54b(5). In the case of murder in the course of sexual assault, it is the circumstances of the sexual assault that causes the murder to satisfy the threshold requirements of capital felony. In the case of murder in the course of a kidnapping, it is the circumstance of the kidnapping that causes the murder to satisfy the threshold requirements of capital felony. Multiple killing serves the same purpose as sexual assault and kidnapping — the existence of the particular circumstance "justif[ies] the imposition of a more severe sentence on the defendant compared to others found guilty [only] of murder." State v. Breton, supra, 212 Conn. 265. When a murder is committed in the course of a sexual assault, for example, and the charged aggravant is that the defendant committed the capital felony in a heinous, cruel or depraved manner[27], the state is not required to prove that both the killing and the sexual assault took place in a heinous, cruel or depraved manner.[28] The state need only prove that the defendant's behavior in the course of committing the "offense" was heinous, cruel or depraved. For the same reason, the other murders in a multiple murder should not have to be aggravated in order for the state to meet its burden of proving the existence of an aggravating factor. Requiring the state to prove that each murder was aggravated would actually place the state in the position of having to prove the existence of at least two
aggravating factors each time the state charged a defendant with a multiple murder, capital felony. General Statutes § 53a-46a(f) only requires that the state prove "one" aggravating factor in order to satisfy its burden.[29]
This court rejects the view that §§ 53a-54b and 53a-46a, taken together, can be logically read more than one way: 1) that the state is required to prove that only one murder in a multiple murder is aggravated, or 2) that the state is required to prove that each murder of a multiple murder is aggravated. The second interpretation, urged by the defendant, can only produce absurd CT Page 15056 and bizarre results. For example, in the case of a home invasion, if a defendant murdered the husband in a heinous, cruel or depraved manner and then on his way out shot and killed the victim's sleeping wife, he would not likely be subject to the possibility of the death penalty for a capital felony pursuant to § 53a-54(b)(8). Surely the legislature could not have intended such a result. Furthermore, "[t]he rule of strict construction . . . does not require that the most narrow, technical and exact meaning be given to the language of a statute in frustration of an obvious legislative intent. . . . Common sense should be applied to the language of a penal statute, particularly if otherwise absurdity or frustration of the evident design of the legislature results." State v. Albert,50 Conn. App. 715, 726 (1998); see also State v. Parmalee,197 Conn. 158, 165 (1985) (holding "that if there are two possible interpretations of a statute and one alternative proves unreasonable or produces the possibility of bizarre results, then the more reasonable alternative should be adopted.) A multiple homicide in which one murder is aggravated is worse than a multiple homicide in which none of the murders were aggravated. Making this distinction serves the purpose of aggravating factors; to "narrow the class of persons eligible for the death penalty . . . reasonably justify[ing] the imposition of a more severe sentence of the defendant compared to others found guilty of murder."
 IV. UNANIMITY IS REQUIRED ON MITIGATING FACTORS A. THE (h) FACTORS ARE NOT PART OF THE WEIGHING PROCESS
This may be the first case to proceed to trial under General Statutes (Rev. 1995) § 53a-46a. Public act 95-19 revised §53a-46a to include the weighing of aggravating and mitigating factors. Prior to 1995, whenever a jury sitting on a capital case determined that one mitigating factor existed, regardless of whether that factor was statutory or not, the existence of that factor acted as a complete bar to the imposition of the death penalty. General Statutes §(Rev. 1993) 53a-46a(g); State v.Ross, supra, 230 Conn. 239. Since October 1, 1995, the sentencing scheme allows jurors to weigh aggravating and mitigating factors. The existence of one non-statutory mitigating factor, 53a-46a(d), does not act as a total bar to the death penalty.
The addition of a weighing component presents the court with CT Page 15057 the issue of what constitutes a weighable mitigating factor. Prior to the 1995 revisions mitigating factors were covered in subsection (g) of General Statutes (Rev. 1993) § 53a-46a. According to subsection (g) all mitigating factors played the same role and carried the same weight; both statutory mitigating factors and the non-enumerated mitigating factors, if found to exist by the trier of fact, acted as complete bars to the imposition of the death penalty. General Statutes (Rev. 1993) §53a-46a(g).[30] However, after the 1995 revisions the statutory mitigating factors and the non-enumerated mitigating factors were separated into two distinct subsections; with each subsection playing a different role in the overall scheme. The enumerated factors[31] were reclassified under subsection (h), and were not defined using the term "mitigating factor."[32] Instead, only the non-enumerated factors discussed in subsection (d) have been defined as mitigating factors.[33] As a result of this reclassification, the court must decide which factors can be considered by the fact-finder during the newly-created weighing process.
The state claims that the (h) factors are still "statutory mitigating factors," and as such, when a jury is deadlocked on the existence of a factor or factors, the (h) factors can be considered during the new weighing phase. The defendant on the other hand claims that the (h) factors are no longer mitigating factors and are not part of the weighing process.[34] While the statute no longer uses the term "mitigating factor" in relation to the (h) factors, the legislative history reflects that the legislators used that term when they were discussing the proposed legislative changes of public act 95-19.[35] Because the statute is not clear on its face, the court's fundamental objective is to ascertain and give effect to the apparent intent of the legislature. State v. Harrell, supra, 238 Conn. 832. Although (h) factors are not referred to in the statute as statutory mitigating factors, they act to preclude the death penalty when a jury unanimously determines that one or more factor is present in a particular case. When the jury cannot come to a unanimous decision as to the existence of an (h) factor, the result is either a declaration of a mistrial or a declaration by the trial judge that the defendant has been "acquitted" of the death penalty. State v. Daniels, 207 Conn. 374 (1988).
The language of the statute and the discussions of the legislature lead this court to the conclusion that the (h) factors are not part of the weighing process. The statute clearly CT Page 15058 distinguishes between the mitigating factors of subsection (d) and the factors of subsection (h).[36] Three subsections of General Statutes § 53a-46a mention, as three separate concepts, aggravating factors, mitigation factors and (h) factors. General Statutes § 53a-46a(e), (f), (g). The most compelling language, however, rests in subsection (e): "The jury, or if there is no jury, the court shall return a special verdict setting forth its findings as to the existence of any factor set forth in subsection (h), the existence of any aggravating factor or factors set forth in subsection (i) and whether any aggravatingfactor or factors outweigh any mitigating factor or factors foundto exist pursuant to subsection (d)." (Emphasis added.) Subsection (e) clearly delineates three groups of factors which may be considered at certain times during jury deliberations. The last sentence of subsection (e) instructs jurors that when they reach the weighing stage, they are to weigh aggravating factors against mitigating factors "found to exist pursuant to subsection (d)." The statute does not direct the jurors to consider the (h) factors in relation to the aggravating factors during the weighing stage. In light of the principle expressio unius estexclusio alterius this court will not infer that the legislature intended that the (h) factors were to be included in the weighing process.
The legislative history also directs that the (h) factors are not to be part of the weighing process. During the House debates in April of 1995, the representatives discussed which factors were part of the weighing process. Representative Scalettar explained: "The last commentary on this amendment mentioned that when the aggravating and mitigating factors are found, if indeed they are, there is a weighing process. Now that weighing process applies if it is not a section (h) mitigating factor in whichcase there is no weighing process. . . ." 38 H.R. Proc., Pt. 3, 1995 Sess., p. 943-944. Later, she clarified: "I want to just be thorough on the record then. The section h factors are not part of the weighing process and there is no proposal to date to eliminate them. . . ." Id., 1056. Representative Jarjura, one of the main proponents of the bill in the House, indicated that "Representative Scalettar [was] correct." Id. This issue was also raised in the Senate earlier in the session. Senator Williams asked: "If the — if at such a hearing, the impartial fact finder or the judge does not determine that any of those four prohibitions exist, would it be possible to raise those issues again at the hearing stage as mitigating factors?" 38 S. Proc., Pt. 2, 1995 Sess., p. 603. Senator Upson, one of the main CT Page 15059 proponents of the bill in the Senate, responded: "I would suggest that while they're not — yes, I would say they could be, although there are still bars." Id. Senator Upson's comments are ambiguous. It is not clear what he actually meant when he said that the (h) factors could be considered during the weighing phase, "although there are still bars." Representative Scalettar's comments on the other hand, were quite clear: "the section h factors are not part of the weighing process. . . ." This court finds the language from the House proceedings more authoritative as well as more logically consistent with the language of the statute.
 B. THE DANIELS ANALYSIS STILL APPLIES
Both the state and the defendant agree on the procedures for dealing with the (h) factors when there is juror unanimity. If all of the jurors agree that one or more (h) factor has been proven,[37] then the death penalty cannot be imposed. If the jurors unanimously agree that no (h) factors have been proven, then the jurors proceed to the weighing phase in which the aggravating factor or factors are weighed against the mitigating factors set forth in subsection (d). The dispute between the state and the defendant[38] involves the possibility of a hung jury.
The Connecticut Supreme Court has previously held that when a jury is deadlocked over the existence of a mitigating factor the outcome is either a mistrial or an acquittal from the death penalty.[39] State v. Daniels supra, 207 Conn. 374. The reason the Court in Daniels held that a hung jury resulted in a mistrial, and not a finding that the defendant had failed to meet its burden of proving a mitigating factor by a preponderance of the evidence, is because "[i]t is settled doctrine in Connecticut that a valid jury verdict in a criminal case must be unanimous. A non-unanimous jury . . . cannot render any findings of fact." (Citations omitted.) Id., 388. While a hung jury does not indicate by unanimous vote that the defendant has failed to prove the existence of a mitigating factor, neither does it indicate that the defendant did prove a mitigating factor. In the event that there would be a finding that an aggravating factor existed, but no finding as to whether a mitigating factor existed, the defendant would not be entitled as a matter of law to a sentence of life imprisonment on his conviction for capital felony. Id., 393. When the Connecticut Supreme Court issued its ruling inDaniels it "freely acknowledge[d] that [its] construction of CT Page 1506053a-46a place[d] Connecticut alongside a very small minority of jurisdictions with regard to the proper procedure to be followed when the jury cannot unanimously agree. The majority of states have provided statutorily for an automatic sentence of less than death in the event of a deadlocked jury." Id., 393.
Daniels, however, has not been modified or overturned by the Supreme Court since it was decided in 1988. General Statutes (Rev. 1995) § 53a-46a contains no section or provision indicating a legislative intent to address hung juries any differently from the way in which they have been addressed since Daniels. Connecticut continues to subscribe to the doctrine that unanimity is required for a valid jury verdict. The new weighing stage does not affect the Daniels analysis. Before the weighing stage occurs, there must be two determinations. The jury must determine if an aggravating factor (or factors) exists and if an (h) factor (or factors) exists. If the jury determines that the existence of an aggravating factor (or factors) has not been proven beyond a reasonable doubt, the inquiry stops and the court must impose the sentence of life imprisonment without the possibility of release. If the jury determines that an aggravating factor (or factors) exists then the jury must determine if an (h) factor (or factors) exists. If the jury finds that an (h) factor does exist, the inquiry stops and the court must impose the sentence of life imprisonment without the possibility of release. If the jury determines that no (h) factor exists the jury goes on to determine if a mitigating factor, pursuant to subsection (d) exists. If, however, the jury cannot agree as to the existence of an (h) factor, and a deadlocked jury results, the court may either declare a mistrial or "acquit" the defendant of the death penalty and impose life without the possibility of release. The jury will not proceed to the weighing stage.
If the jury determines that no (h) factor exists, it proceeds to the weighing stage and makes a number of determinations. First, the jury must determine whether a mitigating factor exists pursuant to subsection (d) of 53a-46a. If the jury determines that no mitigating (d) factors exist, then the court will impose the sentence of death. If, on the other hand, the jury cannot agree as to the existence of a mitigating (d) factor, then the result is a hung jury, and the court will either declare a mistrial or "acquit" the defendant of the death penalty and impose the sentence of life imprisonment without the possibility of release. If the jury determines that one or more mitigating (d) factors does exist then the jury must weigh that factor (or CT Page 15061 factors) against the aggravating factor (or factors) and decide if the mitigating factor (or factors) outweighs the aggravating factor (or factors) or the aggravating factor (or factors) outweighs the mitigating actor (or factors). If the mitigating factor (or factors) outweighs the aggravating factor (or factors) the court shall impose a sentence of life imprisonment without the possibility of release. If the aggravating factor (or factors) outweighs the mitigating factor (or factors) then the court will impose the sentence of death. Again, if the jury cannot agree, the court can declare a mistrial or "acquit" the defendant of the death penalty and impose life imprisonment without the possibility of release.
As far as this court is concerned, State v. Daniels is still controlling law in this state and therefore this court is obliged to conform to it until, by judicial or legislative expression, it is either modified or overturned. The state, citing State v. Daniels, supra, 207 Conn. 374, Mills v.Maryland, supra, 486 U.S. 367, and McKoy v. North Carolina,supra, 494 U.S. 433, claims that its interpretation of the law is more sensible. However, the maxim that "criminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant" applies in this case. State v. Harrell, supra,238 Conn. 832. "In its death penalty decisions since the mid-1970s, the United States Supreme Court has emphasized the importance of ensuring reliable and informed judgments . . . the reliability of death sentences depends on adhering to guided procedures that promote a reasoned judgment by the trier of fact. The requirement of a unanimous verdict can only assist the capital sentencing jury in reaching such a reasoned decision." State v. Daniels,supra, 207 Conn. 389.
Barry, J.